**Jack Lee NOBLE, Plaintiff,**

v.

**Fred T. WILKINSON, Harold R. Swenson, and Lt. Wyrick, Defendants.**

**Civ. Misc. No. 5–68.**

United States District Court
W. D. Missouri,
Central Division.

Sept. 12, 1968.

Jack Lee Noble, pro se.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

### I.

On June 17, 1968 we denied plaintiff's application for federal habeas corpus on the merits. See Noble v. Swenson (W.D. Mo.1968), 285 F.Supp. 385. On August 19, 1968 plaintiff presented for later filing a pleading labeled "Civil Rights Suit and Motion for Restraining Order." In his letter of transmittal plaintiff instructed the Clerk to hold that document for filing until August 29, 1968. On August 28, 1968 plaintiff forwarded to

the Clerk a second pleading entitled an "Amendment to the Original Suit."

The usual application to proceed *in forma pauperis* is attached only to the first pleading. We shall consider that application broad enough to cover both pleadings presented but leave to proceed *in forma pauperis* will be denied for reasons we now state.

Plaintiff's first pleading alleges that his "present confinement [in the maximum security unit of the Missouri penitentiary] is detrimental to his health" and allegedly "in violation of the 'cruel and unusual punishment' clause of the Constitution of the United States."[1] Plaintiff alleged that he "suffers from an incurable disease; chronic bronchitis" and that confinement in the maximum security unit could aggravate that allegedly chronic condition so that it might become acute and thereby "result in the plaintiff's demise."

Plaintiff's first prayer for relief is for an order "restraining the defendants from confining this plaintiff in any manner or way which is detrimental to his health." That prayer must and will be treated as an application for habeas corpus relief.

Plaintiff's second prayer for relief is that this Court "make and issue its proper order in the premises awarding plaintiff $50,000 actual damages to plaintiff's health and $50,000 punitive damages." That prayer must and will be treated as an effort to plead an action for damages.

## II.

We deal first with plaintiff's effort to invoke our habeas corpus jurisdiction. In Winford v. Wilkinson (W.D.Mo.1968),

288 F.Supp. 916, this day decided, we dealt with a complaint tendered by another inmate of the Missouri penitentiary in which that inmate, as does this plaintiff, in part sought to obtain his removal from the maximum security unit to the general population of that institution. We treated that portion of the complaint in *Winford,* as we treat a portion of plaintiff's complaint in this case, as an effort to invoke the habeas corpus jurisdiction of this Court. In that case, as in this, the plaintiff did not allege that he had unsuccessfully attempted to exhaust his apparently available state court remedy of habeas corpus. In both cases it is obvious from the allegations of both complaints that neither plaintiff would have had time to have exhausted available state court remedies if he had in fact attempted to do so.

The principles stated in *Winford* concerning the exercise of our habeas corpus jurisdiction are applicable to that portion of the plaintiff's complaint in this case that seeks federal habeas corpus relief. For the reasons stated in *Winford,* which we incorporate as a part of our memorandum opinion in this case by this reference, we refuse to grant plaintiff leave to proceed *in forma pauperis* in regard to that portion of his claim. We shall continue to do so until it is appropriately demonstrated, preliminarily by the pleadings and thereafter by appropriate pretrial procedures, that plaintiff has exhausted his apparently available state court remedy of habeas corpus.

## III.

We turn now to plaintiff's effort to have this Court exercise its discretion to

---

[1] Plaintiff concedes that he was placed in maximum security for the violation of a valid institutional rule prohibiting the possession of knives by inmates. He expressly states that he "does not contest the validity of the charge, nor the reason for being sentenced to maximum security segregation." Plaintiff's broad and conclusory claims that his "rights to petition the Courts are being obstructed," that the defendants "have committed 'breach of promise,' contrary to federal law," and that plaintiff "is being made the victim of discrimination" are noted but cannot fairly be said to add anything to plaintiff's claims for the reason that both of plaintiff's pleadings are devoid of any substantial allegations of fact concerning those matters.

permit him to proceed *in forma pauperis* in regard to his alleged claim for damages. The rationale of what we said in *Winford* in regard to plaintiff's attempt in that case to obtain leave to proceed *in forma pauperis* for the purpose of invoking jurisdiction conferred by Sections 1983 and 1985 of Title 42, United States Code, and Section 1343 of Title 28, United States Code, is generally applicable to plaintiff's similar effort in this case.[2]

*Winford* presented a more narrow question than that presented by this case. The question presented in *Winford* was whether the plaintiff in that case had complied with an interlocutory order entered in an earlier case in which he sought leave to proceed *in forma pauperis*. The pleadings presented by plaintiff in this case represent his first attempt to obtain leave to proceed *in forma pauperis*. Because it is not unlikely that the situation presented in this case may be presented in later cases it is therefore appropriate for that and other reasons to add to what we said in *Winford*.

*Winford* (No. 1333) was one of twenty-five separate cases included in the group of cases involving prisoners in the Missouri penitentiary reported as Burns et al. v. Swenson (W.D.Mo.1968), 288 F. Supp. 4; Cupp et al. v. Swenson (W.D. Mo.1968), 288 F.Supp. 1, and Griffin v. Turner et al. (W.D.Mo.1968), 288 F. Supp. 12. Our opinion in those cases took note of the fact that the Missouri Department of Corrections has recently promulgated and put into effect a completely revised set of rules and regulations regulating inmate conduct at the Missouri State Penitentiary.

In those cases we found and determined that confinement in the maximum security unit of that institution standing alone, did not constitute cruel and unusual punishment, within the meaning of the Constitution of the United States. We judicially approved the new rules and regulations, finding and determining that they were consistent with all applicable due process requirements of the Constitution of the United States.

We there stated that questions of whether defendants were in fact following the new administrative rules and regulations as they might be applicable to a particular inmate must be treated with very specific and individual judicial scrutiny. We stated in *Cupp* that:

It is clear that no court has jurisdictional power, inclination, time, or expertize to administer the normal disciplinary problems of the Missouri State Penitentiary. Such is clearly the ordinary business of the administration and employees of the Department of Corrections, subject only, so far as this Court is concerned, to the standards required by the Constitution of the United States.

We also stated in that case that:

The only legitimate *forma pauperis* invocation of this Court's jurisdiction can be made pursuant to the exercise of its discretion under Section 1915, Title 28, United States Code, in a case in which an inmate alleges that a federally protected constitutional right has been or is presently being violated by an employee of the Department of Corrections acting under color of state law. If an inmate has not given those responsible for the administration of the institution an opportunity to correct an alleged violation by a subordinate employee, it is indeed difficult to see how those in charge of the institution can be said to have deprived the particular inmate of some right. Certainly this factor is one that should be taken into account in

---

2. In addition to the sections of the United States Code relied upon by plaintiff in *Winford*, plaintiff in this case also cites Section 1981 of Title 42, United States Code, Sections 241 and 242 of Title 18, United States Code, and Section 1443 of Title 28, United States Code. The citation of those additional sections of the United States Code does not affect the considerations that control the exercise of our discretion to grant leave to proceed *in forma pauperis*.

regard to the exercise of discretion vested by Section 1915.

We refused to grant leave to proceed *in forma pauperis* in *Cupp* et al. until the plaintiffs there involved had first exhausted the administrative remedy provided in the Grievance Procedures recently established by the Department of Corrections. Specifically, we ordered that any new or amended complaint that might be presented for filing by any of those plaintiffs shall state with particularity the steps taken by the particular plaintiff to obtain appropriate administrative review and that leave to file any new or amended complaint *in forma pauperis* would not be granted unless the complaint appropriately contained such a statement.

Those orders were entered in light of the extensive proceedings had in the *Burns* group of cases and in light of the controlling principles stated by our Court of Appeals in regard to considerations that control the exercise of the broad discretion vested in the district courts by Section 1915 of Title 28, United States Code. Those principles are stated in Carey v. Settle (8th Cir. 1965), 351 F.2d 483 at 484:

Prisoners will not lightly be permitted to use 28 U.S.C.A. § 1915(a) to institute suits for damages or injunction against the officials in whose custody they have been placed for confinement. Taylor v. Steele, 8 Cir., 191 F.2d 852, 853. Such actions are too frequently mere outlets for general discontent in having to undergo penal restraint or of personal satisfaction in attempting to harass prison officials. A court therefore should be satisfied that there exists substantiality as to such a claim, of justiciable basis and of impressing reality before it permits a prisoner to maintain an action therefor on informa-pauperis privilege. Weller v. Dickson, 9 Cir., 314 F.2d 598, 601–602 (concurring opinion).

Plaintiff in this case demonstrated a familiarity with our findings and orders entered in *Burns, Cupp* and *Griffin*. In his first pleading he stated: "Plaintiff urges the Court to forego the five step grievance procedure" for the alleged reason that "plaintiff has tried, unsuccessfully, to obtain adequate relief from the respondents since June 10, 1968." He also alleged in his first pleading that he had furnished his caseworker a carbon copy of the complaint he now seeks to file in this Court but that he had not heard anything further from him at the time he forwarded that first pleading to this Court.

Plaintiff's second pleading makes clear that plaintiff's caseworker treated the copy of plaintiff's first pleading as the first step in the Grievance Procedure and that he properly commenced processing plaintiff's complaint in accordance with the new rules and regulations. A photocopy of the caseworker's written report is attached to plaintiff's second pleading. That report states:

The following is in reference to a grievance received from Jackie L. Noble dated July 29, 1968. The actual grievance has followed the inmate grievance procedure as set down in the Inmate Rule Book and appears to be acceptable as far as Procedure II is concerned.

Regarding Mr. Noble's first complaint, "I am advised that for the past two years inmates have been sentenced from 30 days to 90 days by the Classification Board for the charge of possession of a knife. When I expressed this to the Classification Board, I was told 'but those guys' names aren't Noble.'"

In reviewing Mr. Noble's past conduct record, it is noted that he has been placed on Maximum Security status on several occasions for assaultive behavior. The instant charge of possession of a knife is Mr. Noble's second charge of this nature since January 30, 1967. Based upon Mr. Noble's past history of assaultive behavior, the Maximum Security review

date of December 5, 1968 does not appear to be excessive.

Mr. Noble's second complaint was of a medical nature.

1. "I am now 42 years old, my right arm is partially paralyzed, and my lungs are very weak."

2. "The dampness and conditions in Maximum Security are entirely detrimental to my health and every time I am placed here in this basement for any period of time, I get fluids in my lungs. My medical record will prove this."

Regarding Mr. Noble's second complaint, an extensive physical examination was conducted by Dr. Henry Petry, D.O., and the report is attached.

In summation, the caseworker after thoroughly investigating Mr. Noble's complaints has not found the grievances as outlined supported by factual evidence.

Plaintiff's second pleading shows that plaintiff's health claim was appropriately investigated. The copy of an X-ray report attached to that pleading shows that as of July 19, 1968, plaintiff's: "Chest Negative. No evidence of active pulmonary pathology." Also attached to plaintiff's second pleading is a two page report of a medical examination conducted by Dr. Henry Petry in which it is stated: "In summary, Inmate Noble, #01913, appears to be in good health. He does have one complaint: a cough. No apparent reason for the cough could be found upon examination, other than that the patient smokes."

■ Plaintiff does not allege that the medical data presented by him to this Court is not authentic. Nor does he contend that the doctors presented anything other than their accurate medical judgment. Plaintiff's second pleading shows that plaintiff received proper medical attention immediately after he complained about his condition. This Court would not exercise jurisdiction in regard to plaintiff's medical complaint as established by his own pleadings in light of the principles recently stated and applied in Veals v. Ciccone (W.D.Mo. 1968), 281 F.Supp. 1017. Plaintiff should therefore not be permitted to proceed *in forma pauperis* in a case in which it is apparent that this Court would not grant relief on the merits.

### IV.

Plaintiff's allegations concerning the length of time he will be required to spend in the maximum security unit also lack the substance required for the exercise of this Court's jurisdiction. Our Section 1915 discretion should not therefore be exercised to hear and determine that portion of plaintiff's complaint.

Plaintiff alleged that he wants "to call upon a large number of inmates who have served or are now serving thirty (30) to ninety (90) days for 'possession of a knife,' along with their disciplinary records to prove that plaintiff's record is no worse, and possibly much better, than most cases which would need to be called as testimonial witnesses." He contends that "the issues of fact presented can only be determined by an evidentiary hearing upon the merits in the Federal District Court."

■ It is quite apparent that plaintiff is under the totally erroneous impression that this Court is vested with some sort of appellate jurisdiction over the decisions of the Missouri correctional authorities. Specifically, plaintiff would have this Court review plaintiff's past history of assaultive behavior and that of other inmates for the purpose of determining whether the date of December 5, 1968 established in regard to plaintiff's most recent confinement in the maximum security unit should or should not be affirmed. This Court does not have and will not exercise that sort of appellate jurisdiction over the administrative decisions of the Missouri correctional authorities.

Numerous authorities establish that proposition. The plaintiff in Harris v.

Settle (8th Cir. 1963), 322 F.2d 908, for example, alleged that his placement in solitary confinement and later in a modified restricted unit and his segregation from the main population of the prison for violation of an institutional rule constituted a violation of the Eighth Amendment's guaranty against the infliction of cruel and unusual punishment. Our Court of Appeals held that such allegations did not present the "rare and exceptional situation where a court would undertake to review the nature and condition of a prisoner's otherwise lawful confinement." *Harris* cited and relied upon the Fourth Circuit's decision in Roberts v. Pegelow (4th Cir. 1963), 313 F.2d 548, in which that court held that "if one [prisoner] is given greater freedom of movement than another, or if one becomes a trusty, while many do not, such routine matters of prison administration ought not become the subject of judicial controversy."

■ It cannot be fairly said that the establishment of plaintiff's review date of December 5, 1968 is so unreasonable as to be subject to a possible characterization of cruel and inhuman treatment, within the meaning of the Eighth Amendment. Nor can it fairly be said that under the facts alleged, if true, any of plaintiff's other federally protected rights could have been abridged.

In light of the substantive law applicable to the question that would be presented, there is no appropriate reason for the exercise of the discretion vested by Section 1915 to permit plaintiff to proceed *in forma pauperis* in connection with his alleged claim for damages.

## V.

There is a further important reason why we should not exercise our Section 1915 discretion in favor of plaintiff's present claim. This case illustrates the efficacy and utility of considering whether a particular inmate in the Missouri penitentiary has in fact exhausted his presently available administrative remedies as one factor to be considered in determining whether leave

to proceed *in forma pauperis* should be granted. In spite of the obvious impatience of the plaintiff to again litigate in federal court, his second pleading shows that the Missouri correctional authorities are in fact administering the new Grievance Procedure with appropriate good faith and in accordance with the spirit that prompted the promulgation of the new rules and regulations.

Under the applicable Grievance Procedure, plaintiff in this case needed only to present a short and concise written statement of his complaint to his caseworker. That procedure appropriately requires that the inmate state whom he has contacted and the answers received to alleviate his grievance. Plaintiff in this case unnecessarily—and quite inappropriately—handed his caseworker a legal document he intended to attempt to file in this Court. Be that as it may, the caseworker accepted plaintiff's grievance regardless of its inappropriate form and properly proceeded to deal with the problem presented by plaintiff's claim that his health was being endangered by his confinement in the maximum security unit and his claim of disparity.

The X-ray and doctor's report that followed in due course afforded a proper base upon which subsequent administrative action would have been based. Plaintiff's attachment of that data to his pleadings also provided this Court reliable factual information that could be and was in fact considered as one factor in determining whether Section 1915 discretion should be exercised in this particular case.

Plaintiff's impatience prevented the Grievance Procedure from progressing beyond its step III stage. Plaintiff obviously was not content with the report submitted by the caseworker in accordance with step III. Plaintiff had the right to so indicate and the caseworker, in accordance with step IV, would have referred the matter to the proper higher administrative official, Board, or Committee for further consideration. Instead of exhausting his remedy for ad-

ministrative review under step IV, plaintiff attempted to proceed *in forma pauperis* in this Court.

It is apparent that the documentation attached to plaintiff's pleadings in this case was most helpful to this Court in its determination of whether plaintiff should be granted leave to proceed *in forma pauperis*. It is equally obvious that had plaintiff in this case exhausted his available step IV administrative appeal from the step III determination, this Court would have had available even more reliable factual data upon which questions of discretion and jurisdiction could be determined. The Grievance Procedure expressly provides that an appropriate written record shall be made in connection with each step taken by higher officials or committees. That additional data, of course, will be available to this Court in cases in which a particular inmate does in fact exhaust his right of administrative appeal under step IV of the Grievance Procedure.

The importance of administrative exhaustion with its automatic production of appropriate and reliable written factual data is not confined solely to the determination of whether Section 1915 discretion should be exercised. Should discretion be exercised in favor of a particular plaintiff, or if cases are regularly filed with all fees and costs paid, the factual data produced by exhaustion of all steps of the Grievance Procedure will be of the greatest importance in the determination of what, if any, further proceedings should be directed in a particular case.

## VI.

The competing considerations in processing prisoner litigation have long been recognized. Judge Duniway's concurring opinion in *Weller v. Dickson* (9 Cir. 1963), 314 F.2d 598, at 601, was cited with approval by the Eighth Circuit in *Carey v. Settle*, supra. Judge Duniway noted at page 602 from sad experience that particular prisoners "do not hesitate to allege whatever they think is required in order to get themselves even

the temporary relief of a proceeding in court" and that "particularly since *Monroe v. Pape*, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, it has become apparent that the 'jailhouse lawyers' think that they have a new bonanza in the Civil Rights Act."

Judge Duniway turned to the Eighth Circuit's opinion in *Higgins v. Steele* (8th Cir. 1952), 195 F.2d 366, for what he considered the best statement of the judicial policy that must be followed. In *Higgins v. Steele* our controlling court stated:

> "While it is important that no prisoner be denied justice because of his poverty, it is also important that the prison authorities, government counsel, and the courts be not harassed by patently repetitious, meritless, frivolous or malicious proceedings.

Exhaustion by inmates of the Missouri penitentiary of the presently available administrative Grievance Procedures cannot help but produce reliable factual data that will assist this Court in its discharge of duty to identify and appropriately dispose of the "patently repetitious, meritless, frivolous or malicious proceedings" in a fair and expeditious manner. Unless some sort of fair preliminary procedural requirements concerning the exercise of Section 1915 discretion are evolved the federal courts simply are not going to have sufficient judicial time to deal with those cases in which a prisoner might be denied justice because of his poverty. The same thing is true in regard to the waste of time of the correctional authorities, their counsel, and the members of the Bar of this Court who traditionally represent prisoners *pro bono publico* in the interest of justice. None of those people should be required to spend any more of their time in this or any other court than is absolutely necessary.

■ We do not suggest that exhaustion of the now available Grievance Procedure will eliminate the necessity for all evidentiary hearings or even trial by jury in all cases filed by inmates of the

Missouri penitentiary. We do suggest that in the usual prisoner case such exhaustion will provide adequate and reliable factual data upon which this Court can rely in determining whether Section 1915 discretion should be exercised and in directing further proceedings in appropriate cases. If reasonable doubt about the reliability of the factual data produced by exhaustion of the administrative procedure is demonstrated in a particular case, the Rules of Civil Procedure are available for use as in any other case. Such cases will be dealt with when and if they arise. It is not necessary to direct further proceedings in this case because the factual data attached to plaintiff's own pleadings establishes that we should refuse to exercise our Section 1915 discretion in plaintiff's favor.

For the reasons stated, it is

Ordered that plaintiff's first and second pleadings be given a miscellaneous number by the Clerk of this Court in order that the files and records of this Court reflect this order denying plaintiff leave to commence his action *in forma pauperis*, pursuant to Section 1915, Title 28, United States Code.