STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. GORDON WILFRED BRAXTON, DEFENDANT-APPEL-LANT.

Superior Court of New Jersey
Appellate Division

Argued May 4, 1970—Decided July 16, 1970.

Before Judges GOLDMANN, LEWIS and MATTHEWS.

*Mr. Barry S. Greenberger* argued the cause for appellant (*Messrs. Valenti & Greenberger,* attorneys).

*Mr. Arthur J. Timins,* Assistant Prosecutor, argued the cause for respondent (*Mr. Karl Asch,* Union County Prosecutor, attorney).

The opinion of the court was delivered by

MATTHEWS, J. A. D. Defendant moved to suppress certain evidence as being the fruit of an unlawful search and his motion was denied in the trial court. We granted leave to appeal, and now reverse.

On January 23, 1969 two Westfield Police officers cruising in a patrol car saw a vehicle driving at a moderate speed through the business section of town. Because, they said, the driver was wearing gloves (note it was January); and because of the slow speed, and again because the two occupants, whom they did not recognize, appeared to be looking from side to side, the officers became "suspicious" and trailed this vehicle at a distance. A short while later, the vehicle was stopped by the police who asked the driver for identification. He produced his driver's license and registration card. Due to the ragged condition of the registration, the police were unable, they said, to read the entire license number, although they could make out the three letters and the first two of the three numbers, all of which matched the license plates. Only the final digit was in doubt. Moreover, the name and address of the owner and the physical description of the vehicle completely matched defendant

driver's license and the car itself. Nonetheless, the police felt the circumstances to be suspicious and allegedly ordered the occupants out of the car and frisked them. Defendant alleges that one of the officers ordered him to open the trunk, but the police state that the compliance with their request was wholly voluntary. A search of the trunk, however, disclosed nothing. The police than confiscated the keys to the vehicle and placed defendant and his companion in the patrol car, leaving the "suspect" motor vehicle unlocked and unattended, although they stated that another officer would be along shortly to guard the vehicle. Defendant and his passenger were taken to police headquarters where they were questioned at length as to the ownership of the vehicle. Defendant allegedly requested permission to call a lawyer, but the request was denied. After approximately ½ hour, defendant's ownership of such a car was confirmed through Trenton, but the police evinced a desire to check the serial number of the vehicle. Defendant objected, but was physically taken back to the vehicle. There, one of the officers opened the car door and attempted to read the serial number on the doorpost. He claims at this point he saw something protruding from under the front seat. The protrusion proved to be a sawed-off shotgun, which was immediately seized and defendant was thereupon charged with illegal possession of a weapon.

As noted, defendant moved to suppress the evidence thus seized on the ground that it was the fruit of an illegal search and seizure. The trial judge, in a rather extended oral opinion, found that the police had no probable cause to conduct a search, but further held that the gun was discovered as an incident to a lawful stopping and investigation and was therefore admissible. We might observe that there is nothing in the facts stated to be found by the trial judge which supports his conclusion.

The threshold question here is whether the "investigation" conducted by the police officer was or was not a "search" so as to require a search warrant, an attendant valid arrest, or

probable cause. The State contends that the entire incident was merely an investigatory detention of limited intended scope and that the discovery of the gun was merely a fortuitous by-product of the investigation.

It is, of course, well established that the fruits of an unconstitutional — i. e., legally "unreasonable" — search and seizure must be suppressed at any later criminal proceeding. *Mapp v. Ohio,* 367 *U. S.* 643, 81 *S. Ct.* 1684, 6 *L. Ed.* 2d 1081 (1961) ; *Wong Sun v. United States,* 371 *U. S.* 471, 83 *S. Ct.* 407, 9 *L. Ed.* 2d 441 (1963). However, *N. J. S. A.* 39 :3–29 explicitly authorizes the police to stop vehicles at random and to demand the production of a driver's license and a motor vehicle registration. *Cf. N. J. S. A.* 39 :5–25; *State v. Padavano,* 81 *N. J. Super.* 321, 328 (App. Div. 1963). In *State v. Kabayama,* 98 *N. J. Super.* 85 (App. Div. 1967), aff'd o. b. 52 *N. J.* 507, the temporary stopping of automobiles for purposes of verifying ownership and driving credentials was held to be a valid and reasonable exercise of police power.

If contraband or weapons are visible from outside the vehicle, the observation of such evidence, absent a prior physical entry, does not constitute a "search" within the constitutional meaning. *State v. Gosser,* 50 *N. J.* 438, 447 (1967) ; *State v. Griffin,* 84 *N. J. Super.* 508, 517 (App. Div. 1964) ; *Campbell v. United States,* 110 *U. S. App. D. C.* 109, 289 *F. Supp.* 775 (D. C. Cir. 1961) ; *United States v. Jankowski,* 28 *F.* 2d 800, 802 (2 Cir. 1928) ; see also *State v. Smith,* 37 *N. J.* 481, 496 (1962) ; *State v. Murphy,* 85 *N. J. Super.* 391, 399 (App. Div. 1964), aff'd 45 *N. J.* 36 (1965) ; *State v. Mark,* 46 *N. J.* 262, 271–272 (1966).

Under the facts adduced below, the gun was not visible until the police further checked out the interior of the vehicle. While *N. J. S. A.* 39 :3–29 authorizes temporary detention to check the license and registration, it is apparent that the Westfield police exceeded a simple documentary check and were actually conducting a "search," purportedly of limited intent. Indeed, the officer did not recognize the

object as a gun until he removed it from under the seat. In *State v. Taylor,* 81 *N. J. Super.* 296 (App. Div. 1963), it was held that an officer's opening of the car door and bending over into the vehicle to retrieve an unidentifiable object under the seat was "unquestionably" a search and seizure. Further, we might note the particular language of *State v. Boykins,* 50 *N. J.* 73, 77 (1963), where it was said that if the motor vehicle operator were unable to produce adequate proof of ownership, the investigating officer might "search" the car for proof of proper possession. See also, *People v. Prochnau,* 251 *Cal. App.* 2d 22, 59 *Cal. Rptr.* 265 (Ct. App. 1967); *Draper v. Maryland,* 265 *F. Supp.* 718 (D. Md. 1967). It is evident, then, that the Westfield police did conduct a "search" of defendant's vehicle, thus requiring compliance with the constitutionally mandated safeguard of "reasonableness."

The search of an automobile is not *ipso facto* lawful or unlawful, but the permissibility of such a search is grounded on a fundamental inquiry as to its constitutional "reasonableness." *Carroll v. United States,* 267 *U. S.* 132, 147, 45 *S. Ct.* 280, 69 *L. Ed.* 543 (1925); *Henry v. United States,* 361 *U. S.* 98, 80 *S. Ct.* 168, 4 *L. Ed.* 2d 134 (1959); see also *Preston v. United States,* 376 *U. S.* 364, 84 *S. Ct.* 881, 11 *L. Ed.* 2d 777 (1964); Annotation, "Lawfulness of Search of Motor Vehicle Following Arrest for Traffic Violation," 10 *A. L. R.* 3d 314, 320 (1966). Moreover, the court must apply a commonsense analysis in scrutinizing the activities of the police and the reasonableness of searches. *State v. Miller,* 47 *N. J.* 273, 278 (1966); *State v. Gosser,* above, 50 *N. J.* at 447; *State v. Fioravanti,* 46 *N. J.* 109, 122–123 (1965), *cert. den.* 384 *U. S.* 919, 86 *S. Ct.* 1365, 16 *L. Ed.* 2d 440 (1966).

As to probable cause, it is well established that the investigating officer must possess such information or suspicion as to warrant a man of reasonable caution to believe that an offense has been committed — something more than a mere incriminating inkling and less than absolute proof.

*State v. Taylor,* above, 81 *N. J. Super.* at 308; *Henry v. United States,* above, at 361 *U. S.* 102, 80 *S. Ct.* 168; *Brinegar v. United States,* 338 *U. S.* 160, 175, 69 *S. Ct.* 1302, 93 *L. Ed.* 1879 (1949) ; see also, *Draper v. United States,* 358 *U. S.* 307, 313, 79 *S. Ct.* 329, 3 *L. Ed.* 2d 327 (1959). It is equally clear that, absent such probable cause, the citizen may proceed unimpeded — and unsearched. *Clay v. United States,* 239 *F.* 196 (5 Cir. 1956) (fact that driver was known gambler held insufficient to support search of car) ; *State v. Valentin,* 74 *N. J. Super.* 502 (Law Div. 1962) (fact that police officer did not recognize driver or passenger not sufficient basis for search of car.)

 Ordinarily, an apprehension for a traffic violation will not justify a search except as to related matters — *i. e.,* search of drunken driver's car for liquor-evidence. *State v. Cusick,* 110 *N. J. Super.* 149 (App. Div. 1970), *State v. Scanlon,* 84 *N. J. Super.* 427, 434 (App. Div. 1964) ; *State v. Boykins,* above, 50 *N. J.* at 77 ; see also *United States v. Tate,* 209 *F. Supp.* 762 (D. C. Del. 1962). However, the police may search for proof of ownership where such proof is not satisfactorily produced by the driver. *State v. Boykins,* above, 50 *N. J.* at 77. It is tangentially material, in adjudging if the police had genuine probable cause to conduct the search, whether or not the citizen is arrested or prosecuted for the initial suspected offense. See *State v. Taylor,* above, 81 *N. J. Super.* at 309.

 In the instant case the trial judge found that the police had no probable cause, as such, for the search. Given the minor "discrepancy" on the ragged registration, the long period of detention, and the utter lack of indicia of guilt, it is clear that the police did, in fact, have no probable cause to suspect an offense so as to independently validate the consequent search.

 It is, of course, firmly settled that the police may search a car as an incident to a valid arrest. *State v. Fioravanti,* above, 46 *N. J.* at 122; *Ker v. California,* 374 *U. S.* 23, 41, 83 *S. Ct.* 1623, 10 *L. Ed.* 2d 726 (1963). More-

over, as earlier noted, *N. J. S. A.* 39:3–29 expressly permits the police to stop a vehicle to verify the ownership thereof. See *State v. Kabayama,* above. Equally, law enforcement officers may properly stop and question a person found in circumstances suggestive of a possible criminal violation without making a technical arrest; such an "investigatory detention" is not an arrest and requires, as a reasonable foundation, suspicion of a lesser degree of conclusiveness. *State v. Hope,* 85 *N. J. Super.* 551, 554 (App. Div. 1964); *State v. Dilley,* 49 *N. J.* 460, 467 (1967); *United States v. Bonanno,* 180 *F. Supp.* 71 (S. D. N. Y. 1960), rev'd on other grounds *sub nom. United States v. Bufalino,* 285 *F.* 2d 408 (2 Cir. 1960); see also *State v. Taylor,* above, 81 *N. J. Super.* at 313; *State v. Smith,* above, 37 *N. J.* at 496; *State v. Bell,* 89 *N. J. Super.* 437, 443 (App. Div. 1965); compare *Busby v. United States,* 296 *F.* 2d 328 (9 Cir. 1961), *cert.* den. 369 *U. S.* 876, 82 *S. Ct.* 1147, 8 *L. Ed.* 2d 278 (1962) (gun visible on back seat after driver fails to produce license). Even if the prolonged detention herein was an arrest, the police are entitled, for reasons of justifiable self-protection, to make a contemporaneous search for weapons. *Preston v. United States,* above; *State v. Griffin,* above, 84 *N. J. Super.* at 517; see also, Annotation, 10 *A. L. R.* 3d 314, 328 (1966). Furthermore, the technical arrest need not necessarily precede the search, at least where the two events are so close in time as to be but facets of a single transaction "or connected units of an integrated incident." *State v. Doyle,* 42 *N. J.* 334, 343 (1964). However, as a general caveat, the arrest must not be a mere pretext to conduct the search. See Annotation, 10 *A. L. R.* 2d 314, 322 (1966).

In sum, defendant argues that the "search" was not "reasonable" in constitutional terms and that the evidence must thereby be suppressed. The State contends that the stopping was valid, that there was no "arrest," that the finding of the weapon, in plain view, was wholly adventitious, and that, in any event, the circumstances surrounding the

search were "reasonable." Even without skeptically viewing the officers' version of the incident, the State's paralogistic interpretation of the powers granted under the investigatory statute (*N. J. S. A.* 39:3-29) is manifestly overreaching.

Certainly, the statute empowers the police to stop a vehicle and to examine the driver and ownership documents; and given some difficulties arising from such an investigation, further detention is plainly warranted without making an actual arrest. However, it cannot have been intended by the Legislature that this detention power was to extend indefinitely, particularly where, as here, the driver's license checked with the registration, the description of the car on the registration matched the vehicle, the serial number almost completely matched the license plate except for one unclear number, and the police had verified the ownership of the car with Trenton.

Finally, since the search was so remote from the time of the initial stopping and not coincident with any "arrest" or even palpable suspicion, the plausibility of a self-protective search is minimized.

We conclude that the original stopping was valid under the express powers of the statute, *N. J. S. A.* 39:3-29, but the extended time of the detention without reasonable cause created an actual, if not technical, arrest. Thus, absent probable cause, a search incident to this invalid arrest was constitutionally unreasonable and the evidence should have been suppressed.

We do not hold that all prolonged detentions are "arrests," but rather that, limited to the particular facts of this case, an extended stopping becomes an invalid arrest or at the very least exceeds the bounds of power granted by the detention statute. Accordingly, without passing on the relatively implausible factual reconstruction of the incident propounded by the prosecution, we find the detention and the resultant search "unreasonable" *under the attendant circumstances*.

Reversed.

LEWIS, J. A. D. (dissenting). My reading of the record leads to a conclusion that the denial of the motion to suppress should be affirmed.

Significantly, there had been a rash of robberies in the neighborhood wherein the instant automobile was seen by Patrol Officers Coles and Crosby at 10:45 P.M. traveling about 15 m.p.h. in a 25 m.p.h. zone. The officers testified that they became suspicious when they observed that the passenger was wearing "A hat similar to the type that's been teletyped to our headquarters that's been involved in many robberies that have been hitting different motels in our area." The vehicle had stopped at one point "for about a minute," and "Both occupants looked side to side. You could see their heads moving side to side on opposite sides of the street as they proceeded down Central Avenue." The vehicle was followed by the officers for about five blocks through the business district, and then they halted it for a routine check and requested the operator to produce his driver's license and registration. The registration card was "rather tattered," and somewhat blurred by "battery acid." All the figures thereon were not discernible; this engendered suspicion that the vehicle may have been stolen.

The entire series of events that followed, which are chronologized in the majority opinion, took about half an hour — in my view, not an unreasonable length of time.

The trial judge after observing the registration card found "some very serious discrepancies." He not only found one number confusing, but found the second number obliterated to a degree that he could not be sure of its identity and the first letter to be quite indistinct. He concluded, "good police work required further investigation." After examining that exhibit I agree with the trial judge.

At police headquarters defendant's ownership of "such a car" was verified "from Trenton," whereupon Lieutenant Mormelo requested Officers Coles and Crosby to take defendant back to the vehicle and to make certain that the

serial number on the registration corresponded with the serial number listed on the post of the car door.

This additional precaution in the circumstances, as a final measure of satisfaction before closing the matter, was competent police practice. To do anything less would have rendered the officers derelict in their duty, and for this court to suppress the evidence validly seized by a policeman in the course of performing that responsibility would "unduly hamper law enforcement." See *State v. Boykins*, 50 N. J. 73, 82 (1967); *State v. Kabayama*, 98 N. J. *Super.* 85, 88 (App. Div. 1967), aff'd o.b. 52 N. J. 507 (1968). The rationale of *Boykins* has recently been reflected in *Chambers v. Maroney*, 399 U. S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970).

"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris v. United States*, 390 U. S. 234, 236, 88 S. Ct. 992, 993, 19 L. Ed. 2d 1067, 1069 (1968); *State v. Bell*, 55 N. J. 239, 248 (1970); *State v. Hock*, 54 N. J. 526, 533–535 (1969); *State v. DiRienzo*, 53 N. J. 360, 385 (1969); *State v. McKnight*, 52 N. J. 35, 57–58 (1968). Accord, Annotation 10 A. L. R. 3d 314, 349 (1966); *United States v. Thompson*, 420 F. 2d 536, 540 (3 Cir. 1970); *State v. Lowry*, 95 N. J. *Super.* 307, 325 (Law Div. 1967).

Clearly, too, the assaying of the credibility of the police officers was for the trial judge. *United States v. Carlson*, 359 F. 2d 592, 597 (3 Cir.), *cert.* den. *Bonomo v. United States*, 385 U. S. 879, 87 S. Ct. 161, 17 L. Ed. 2d 106 (1966); *State v. Johnson*, 42 N. J. 146, 161 (1964). Thus, this court should not disturb the finding that when the police officers returned to the vehicle by direction of their superior, "there was no intent to make a search other than to establish proper registration," and while leaning over to read the serial number on the forward door post of the automobile Officer Crosby observed the barrel of a sawed-off shotgun in the car.

Accordingly, I respectfully vote to affirm.