STATE OF NORTH CAROLINA v. PAUL RAY ALLEN, JR., LEROY BRYANT, AND JOE EARL KING

No. 71

(Filed 26 January 1973)

1. Searches and Seizures § 1— bag of money in plain view in defendants' automobile — admissibility

In a breaking and entering and larceny case there was no error in the admission of evidence concerning a bag of money where there was evidence that an officer was given permission to enter defendants' automobile to obtain the registration card from the glove compartment and at that time, without any search, observed the bag and its contents.

2. Arrest and Bail § 3— officer's authority to stop motorist

Officers had authority to stop the vehicle occupied by defendants to determine the validity and presence of the driver's license and registration card. G.S. 20-183(a); G.S. 20-57.

State v. Allen

3. **Arrest and Bail § 3— driver's license check — time of arrest — necessity for probable cause**

Where defendants were stopped pursuant to G.S. 20-183(a), they were not taken into custody and placed under arrest until after an officer commented on the presence of money in the vehicle and after the ensuing flight of defendant King; therefore, the existence of probable cause at the time the car was stopped was not essential.

4. **Arrest and Bail § 3; Searches and Seizures § 1— statutory provision for driver's license check — constitutionality**

The provisions of G.S. 20-183(a), giving an officer the authority to stop a vehicle to determine the validity and presence of the driver's license and registration card, when balanced with the State's obligation to preserve order and enforce safety on its streets and highways, do not constitute such an encroachment on the individual's constitutional rights as to render the statute invalid.

5. **Searches and Seizures § 1— vehicle search at police station — reasonableness**

Where defendants' automobile was stopped on a public street for a driver's license and vehicle registration check at 2:30 a.m., an officer observed money in a paper bag in the vehicle and occupants of the vehicle were taken into custody, such circumstances presented a fleeting opportunity for search which made it impractical to obtain a search warrant; therefore, the action of the officers in removing the car and searching it at the police station was reasonable if probable cause to search existed.

6. **Searches and Seizures § 1— vehicle search — probable cause — admissibility of burglary tools**

In a breaking and entering, larceny and safecracking case where the evidence showed (1) the presence in an automobile of two men seen running from an area behind Weil-Creech Oil Company toward the then parked automobile in the early morning hours, (2) the presence in the automobile of a bag of money, some of which was wrapped in material bearing the inscription "Weil-Creech," and (3) the flight of one of the occupants when an officer commented on the presence of the money, officers had reasonable grounds to believe that defendants had committed a crime and that the automobile in which they were riding contained evidence pertaining to the crime; therefore, evidence concerning burglary tools found pursuant to the search conducted when the vehicle was removed to the police station was properly admitted by the trial court.

ON *certiorari* to the North Carolina Court of Appeals to review its decision (15 N.C. App. 670) finding error in the trial before *Cohoon, J.,* at 19 April 1971 Session of WAYNE Superior Court.

Each defendant was charged in separate bills of indictment with breaking and entering, felonious larceny, and safecrack-

ing. The cases were consolidated for trial, and through counsel defendants entered pleas of not guilty to all charges.

When the State offered its first witness, defendants objected and moved to suppress all evidence and testimony on the grounds that the arrest of the three defendants and the ensuing search of the automobile were illegal. Judge Cohoon, in the absence of the jury, heard evidence from both the State and defendants in two separate voir dire examinations. The pertinent voir dire evidence was concisely and accurately stated by Morris, Judge, of the Court of Appeals, as follows:

"Goldsboro Police Officers Bell and Shackleford were patroling at two o'clock a.m. on 19 January 1971 close to several businesses and in an area where stolen cars had been recovered when they saw a parked car bearing Raleigh city tags. The car was parked approximately a block and a half from the nearest house. The officers received the name and address of the owner upon request to the Department of Motor Vehicles. There was no traffic on the horseshoe shaped street, and no people were seen in the area until a few minutes later when two men were observed running from behind some businesses (including Weil-Creech Oil Company) into bushes in the direction of the parked car. Rather than pursue the men on foot, the officers chose to wait in their patrol car with the lights off. Since there were two possible exits for the parked car to take, the officers requested another patrol car to assist if needed and check the identity of anyone operating the parked car. Some 15 to 30 minutes later Officers Bell and Shackleford observed the previously parked car go by, and two of the three occupants fit the general description of the two men they had previously seen run into the bushes. Officers Bell and Shackleford pulled in behind the car, and cut on their blue light and siren. The car disregarded the blue light and siren, would not stop and instead increased its speed to 40-45 miles per hour in a 35 mile-per-hour zone. When the officers realized the car was not going to stop, they radioed the patrol car stationed ahead to pull out in the road to block its path which it did. The car's occupants were asked to step outside and subsequently frisked for weapons but none was found. Officer Bell requested the driver, defendant King, to show him his driver's license. Defendant King presented his driver's

license and stated that the registration card was in the glove compartment of the car. Defendant King told Officer Bell it was all right to get the registration card so he entered the car from the driver's side and leaned over to get to the glove compartment. In doing so, Officer Bell observed sitting on the back seat a paper bag which was open and leaning towards the front seat. Officer Bell saw that it contained paper money in a clip and coins and that one of the rolls of coins bore the name "Weil-Creech Oil Company." Upon observing the same, Officer Bell picked the bag up and stated, 'Here's a bag of money,' whereupon defendant King started running. King was apprehended and all three defendants were placed under arrest. There is no evidence that Officer Bell ever opened the glove compartment or saw the registration card. In route to the police station, Officer Bell was advised that the Weil-Creech Oil Company had been broken into. After defendants had been arrested and placed in custody, Officer Bell searched under the hood of the car which had been taken to the police station and found crowbars, hammers, pliers, chisel, etc., lying between the radiator and grille. . . . "

Judge Cohoon, after finding extensive facts, concluded that no search of the car was made at the scene because Officer Bell "saw what was plainly before his eyes after having permission to enter said car." The trial court also concluded: "That thereafter the defendants were under arrest, charged with the breaking and entering and larceny of Weil-Creech Oil Company, when the observation or search of the car at the police station was made by Officer Bell; at which time in the Court's opinion no search warrant was necessary."

Judge Cohoon thereupon denied defendants' motion to suppress the evidence concerning the bag of money observed on the backseat of the car and the burglary tools found under the hood of the car at the police station.

The State introduced evidence before the jury substantially of the same import as heard on the voir dire examinations.

The jury returned verdicts of guilty of felonious breaking and entering, felonious larceny, and safecracking as to each defendant. Upon motion of defendant King, the verdict of guilty of felonious larceny was set aside and judgment was arrested on that charge because of misnomer in the bill of indictment.

Defendants appealed from judgment entered on the remaining verdicts. The appeals were not timely perfected, but the Court of Appeals allowed certiorari on 24 September 1971 and 19 January 1972. The State petitioned this Court for certiorari to review the decision of the Court of Appeals, which was allowed on 1 November 1972.

*Attorney General Morgan; Assistant Attorney General Melvin; and Assistant Attorney General Lloyd for the State.*

*George F. Taylor for Paul Ray Allen, Jr.*

*H. Martin Lancaster for Leroy Bryant.*

*David M. Rouse for Joe Earl King.*

BRANCH, Justice.

Defendants contend that the trial judge erred in denying their motions to suppress all evidence against them. In support of this contention they argue that the police stopped them without reasonable cause, illegally searched their automobile and illegally arrested them.

No citation is necessary for the well recognized rule that evidence obtained by unreasonable search is inadmissible in both federal and state courts. However, it is also well recognized in this jurisdiction that the constitutional guarantee against unreasonable search and seizure does not prohibit the seizure and introduction into evidence of contraband materials when they are in plain view and require no search to discover them. *State v. Simmons,* 278 N.C. 468, 180 S.E. 2d 97; *State v. Hill,* 278 N.C. 365, 180 S.E. 2d 21; *State v. McCloud,* 276 N.C. 518, 173 S.E. 2d 753; *State v. Virgil,* 276 N.C. 217, 172 S.E. 2d 28.

[1] The Court of Appeals correctly held that there was no error in the admission of evidence concerning the bag of money. In this connection there is sufficient, competent evidence showing that Officer Bell was given permission to enter the automobile to obtain the registration card from the glove compartment and at that time, without any search, observed the bag and its contents.

[2] We also agree with the conclusion of the Court of Appeals that the officers had authority to stop the vehicle occupied by defendants to determine the validity and presence of the driver's license and registration card. G.S. 20-183 (a) ; G.S. 20-57; *State*

*v. Eason,* 242 N.C. 59, 86 S.E. 2d 774; *State v. Hammonds,* 241 N.C. 226, 85 S.E. 2d 133.

**[3]** Defendants argue, however, that their arrest occurred at the instant the officers stopped them pursuant to G.S. 20-183(a), and since no probable cause for arrest then existed, the warrantless arrest precluded introduction of any of the tendered evidence. The key question is whether the "stopping" of a vehicle necessarily constitutes an "arrest" of its occupants. Specifically, the legality of the evidence turns "upon the narrow question of when the arrest occurred." *Rios v. United States,* 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed. 2d 1688; *Busby v. United States,* 296 F. 2d 328 (9th Cir. 1961).

Persons detained briefly for routine police investigation under circumstances not justifying actual arrest are not *ipso facto* deprived of their constitutional rights. *Rios v. United States, supra; Wilson v. Porter,* 361 F. 2d 412 (9th Cir. 1966); *Busby v. United States, supra.* As stated by the 8th Circuit Court of Appeals, in the case of *United States v. Harflinger,* 436 F. 2d 928 (8th Cir. 1970):

> "The brief detention of a citizen based upon an officer's reasonable suspicion that criminal activity may be afoot is permissible for the purpose of limited inquiry in the course of a routine investigation, and any incriminating evidence which comes to that officer's attention during this period of detention may become a reasonable basis for effecting a valid arrest. As explicated in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889, there is a difference between a limited detention or seizure of a person and an arrest."

Defendants rely heavily upon *Henry v. United States,* 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed. 2d 134, to support their contention that they were arrested as soon as they were stopped, for their "liberty of movement" was then restricted. Defendants can take little comfort from that case because there it was conceded by the prosecution that the arrest took place when the car was stopped. See *Busby v. United States, supra.* "Arrest connotes restraint and not temporary detention for routine questioning." *Schook v. United States,* 337 F. 2d 563 (8th Cir. 1964); *Jackson v. United States,* 408 F. 2d 1165 (8th Cir. 1969).

There is no absolute test to ascertain exactly when an arrest occurs. The time and place of an arrest is determined

in the context of the circumstances surrounding it. *Rios v. United States, supra; Cook v. Sigler,* 299 F. Supp. 1338 (D. Neb. 1969) ; *State v. Rye,* 260 Iowa 146, 148 N.W. 2d 632; *State v. Williams,* 97 N.J. Super 573, 235 A. 2d 684; *State v. Bell,* 89 N.J. Super 437, 215 A. 2d 369; *State v. Romeo,* 43 N.J. 188, 203 A. 2d 23, cert. den. 379 U.S. 970, 85 S.Ct. 668, 13 L.Ed. 2d 563. See also *State v. Jackson,* 280 N.C. 122, 185 S.E. 2d 202. Where a federal offense is not involved, we look to the law of the state to determine when an arrest has occurred and whether or not it is valid. *United States v. Di Re,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; *Wilson v. Porter, supra; Nicholson v. United States,* 355 F. 2d 80 (5th Cir. 1966) ; *Hart v. United States,* 316 F. 2d 916 (5th Cir. 1963) ; *People v. Sanchez,* 256 Cal. App. 2d 700, 64 Cal. Rptr. 331. See *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed. 2d 142; *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed. 2d 726.

The courts of other jurisdictions have considered various situations involving alleged arrests and have determined that a routine license check and the concomitant delay does not constitute an arrest in the legal sense. *Wilson v. Porter, supra; Nicholson v. United States, supra.* In the case of *Lipton v. United States,* 348 F. 2d 591 (9th Cir. 1965), the Court, in holding that no arrest took place when defendant was stopped for the purpose of checking his driver's license, stated: "No other way was available to the officer to determine whether appellant possessed the required license." See *United States v. Lepinski,* 460 F. 2d 234 (10th Cir. 1972) (approved stopping vehicle to demand proof of registration) ; *Frye v. United States,* 315 F. 2d 491 (9th Cir. 1963) (no arrest where vehicle stopped because of equipment violations) ; *United States v. Williams,* 314 F. 2d 795 (6th Cir. 1963) (routine questioning held no arrest) ; *State v. Goudy,* 52 Haw. 497, 479 P. 2d 800 (officer's approach with drawn pistol upon persons stopped for questioning held not an arrest) ; *State v. Carpenter,* 181 Neb. 639, 150 N.W. 2d 129, cert. den. 392 U.S. 944, 88 S.Ct. 2288, 20 L. Ed. 2d 1406 (stopping car after 3 a.m. to indentify car and its occupants held not to be an arrest). See also *Jackson v. United States, supra; People v. Superior Court of Los Angeles County,* 101 Cal. Rptr. 837, 496 P. 2d 1205; *Mincy v. District of Columbia,* 218 A. 2d 507 (D.C. Ct. App. 1966) ; *Gustafson v. State,* 243 So. 2d 615 (Fla. Dis. Ct. 1971) ; *Glover v. State,* 14 Md. App. 454, 287 A. 2d 333.

---

---

The rationale of these cases is aptly stated in *United States v. Bonanno,* 180 F. Supp. 71, at 78 (DCSDNY 1960):

"While the Fourth Amendment may be construed as encompassing 'seizure' of an individual, it cannot be contended that every detention of an individual is such a 'seizure'. If that were the case, police investigation would be dealt a crippling blow, by imposing a radical sanction unnecessary for the protection of a free citizenry."

This Court, in the case of *Stancill v. Underwood,* 188 N.C. 475, 124 S.E. 845, stated that an arrest consisted of "taking custody of another person under real or assumed authority for the purpose of detaining him to answer a criminal charge or civil demand. The application of actual force or visible physical restraint is not essential." See *State v. Shirlen,* 269 N.C. 695, 153 S.E. 2d 364; *Hadley v. Tinnin,* 170 N.C. 84, 86 S.E. 1017; *Lawrence v. Buxton,* 102 N.C. 129, 8 S.E. 774.

Here, defendants were stopped for the purpose of making a brief, limited, routine investigation. It was only after Officer Bell commented on the presence of the money, and after the ensuing flight of defendant King that defendants were taken into custody and placed under arrest. Therefore, the existence of probable cause at the time the car was stopped was not essential.

In instant case the facts giving rise to probable cause to search and probable cause to arrest are identical. Whether probable cause existed is hereinafter determined.

[4] Defendants, without citation of authority, proffer a cursory attack upon the constitutionality of G.S. 20-183(a) on the ground that it is an unreasonable and invalid exercise of the police power. They argue that as applied to their arrest G.S. 20-183(a) was the only source of authority enabling the officers to stop their vehicle. G.S. 20-183(a) provides:

"It shall be the duty of the law enforcement officers of the State and of each county, city, or other municipality to see that the provisions of this article are enforced within their respective jurisdictions, and any such officer shall have the power to arrest on sight or upon warrant any person found violating the provisions of this article. Such officers within their respective jurisdictions shall have the power to stop any motor vehicle upon the highways of

the State for the purpose of determining whether the same is being operated in violation of any of the provisions of this article. . . . "

Assuming *arguendo* that the officers had no power to investigate the suspicious circumstances leading to defendants' arrest, and that the officers acted pursuant to G.S. 20-183 (a), we consider defendants' contention.

New Jersey has a statutory scheme similar to our G.S. 20-183 (a) and G.S. 20-57 (requiring the registration card to be carried in the vehicle at all times). NJSA 39:2-9; 3-29, 8-1 *et. seq.* The courts of New Jersey have considered the constitutionality of these statutes and have held the granting of authority to officers to stop persons to ascertain violations a valid and reasonable exercise of the police power. *State v. Braxton,* 111 N.J. Super 191, 268 A. 2d 40, reversed on other grounds, 57 N.J. 286, 271 A. 2d 713; *State v. Kabayama,* 94 N.J. Super 78, 226 A. 2d 760, affirmed 98 N.J. Super 85, 236 A. 2d 164 (App. Div. 1967), 52 N.J. 507, 246 A. 2d 714. Other jurisdictions are in substantial accord. See *United States v. Ware,* 457 F. 2d 828 (7th Cir. 1972); *United States v. Turner,* 442 F. 2d 1146 (8th Cir. 1971); *Myricks v. United States,* 370 F. 2d 901 (5th Cir. 1967); *City of Miami v. Aronovitz,* 114 So. 2d 784 (Fla. 1959); *Glover v. State, supra.*

We believe the provisions of G.S. 20-183 (a), when balanced with the State's obligation to preserve order and enforce safety on its streets and highways, do not constitute such an encroachment on the individual's constitutional rights as to render the statute invalid. This is not to say that persons stopped pursuant to this statute may be indiscriminately searched or arrested without probable cause in contravention of recognized constitutional principles. See G.S. 15-27 and G.S. 15-27.1; Anno., "Lawfulness of Search of Motor Vehicle Following Arrest for Traffic Violation," 10 A.L.R. 3d 314.

Finally, we consider whether the Court of Appeals, relying on *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564, reh. den. 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed. 2d 120, correctly held that the trial judge erred in admitting evidence concerning the burglary tools.

There are certain exceptions to the general rule that a valid search warrant must accompany every search or seizure.

These exceptions arise when the exigencies of the situation call for unorthodox procedures. Such is the case when it is determined to be impracticable, in light of all the circumstances, to obtain a search warrant. The courts have recognized three situations which justify application of this principle to a course of conduct ordinarily forbidden by the Fourth Amendment. (One may, of course, submit or consent to a warrantless search or seizure. *State v. Virgil, supra; State v. Colson,* 274 N.C. 295, 163 S.E. 2d 376.)

First, a warrantless search and seizure may be made when it is incident to a valid arrest. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed. 2d 685; *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed. 2d 856; *State v. Jackson, supra; State v. Roberts,* 276 N.C. 98, 171 S.E. 2d 440; *State v. Shedd,* 274 N.C. 95, 161 S.E. 2d 477.

Second, evidence obtained by officers without a search warrant is admissible in evidence where the articles are seized in plain view without necessity of search. *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed. 2d 1067; *Ker v. California, supra; State v. Harvey,* 281 N.C. 1, 187 S.E. 2d 706; *State v. Howard,* 274 N.C. 186, 162 S.E. 2d 495; *State v. Craddock,* 272 N.C. 160, 158 S.E. 2d 25; *State v. Kinley,* 270 N.C. 296, 154 S.E. 2d 95.

Third, a warrantless search of a vehicle capable of movement may be made by officers when they have probable cause to search and exigent circumstances make it impracticable to secure a search warrant. *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 2d 419; *Chimel v. California, supra; Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; *State v. Ratliff,* 281 N.C. 397, 189 S.E. 2d 179; *State v. Hill, supra; State v. Jordan,* 277 N.C. 341, 177 S.E. 2d 289.

The search yielding the burglary tools cannot be justified as a search incident to defendants' arrest since the search was made *after* defendants were under arrest and in custody at the police station. *Chambers v. Maroney, supra; Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed. 2d 777. Nor were the burglary tools in plain view so as to preclude the necessity of a search. Thus, if the search was reasonable, it must be because there was probable cause to search under such

State v. Allen

exigent circumstances as to make it impracticable to obtain a search warrant. *Coolidge v. New Hampshire, supra; Chambers v. Maroney, supra; State v. Ratliff, supra; State v. Jordan, supra.*

The cases of *Chambers v. Maroney, supra, Coolidge v. New Hampshire, supra,* and *Carroll v. United States, supra,* highlight the difficulty in defining the circumstances under which there may be a warrantless search of a mobile vehicle.

In *Chambers* the automobile in which the defendants were riding was stopped because the automobile and its passengers fitted a description (one occupant of a light blue compact station wagon wearing a green sweater, another wearing a trench coat) furnished the police by a witness to an armed robbery. The defendants were arrested and the automobile was moved to a police station, where a search made shortly thereafter produced incriminating evidence. In upholding the search Justice White, speaking for the United States Supreme Court, stated:

> "In terms of the circumstances justifying a warrantless search, the Court has long distinguished between an automobile and a home or office. In *Carroll v. United States,* 267 U.S. 132 (1925), the issue was the admissibility in evidence of contraband liquor seized in a warrantless search of a car on the highway. After surveying the law from the time of the adoption of the Fourth Amendment onward, the Court held that automobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize. . . .

> \*     \*     \*     \*     \*

> " . . . Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. Carroll, supra, holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible.

> "Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should

be permitted until a search warrant is obtained; arguably, only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater'. But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

"On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained. . . . "

The defendant in *Coolidge* was suspected of the murder of a 14-year-old child because he owned an automobile similar to the one seen near the place of the murder and because of his unexplained absence from his home at the approximate time of the murder. Soon after his arrest, his automobile, which he regularly parked in the driveway at his home, was towed away. At later intervals of two days, eleven months, and eighteen months, the car was searched and vacuumed without a search warrant. Defendant's motion to suppress evidence obtained from the searches of the automobile was denied. Defendant was convicted of murder, and his conviction was affirmed by the New Hampshire appellate courts. The United States Supreme Court reversed, in part stating:

"As we said in Chambers, supra, at 51, 'exigent circumstances' justify the warrantless search of 'an automobile *stopped on the highway,*' where there is probable cause, because the car is 'movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained.' '[T]he opportunity to search is fleeting . . . . ' (Emphasis supplied.)

"In this case, the police had known for some time of the probable role of the Pontiac car in the crime. Coolidge was aware that he was a suspect in the Mason murder, but he had been extremely cooperative throughout the investigation, and there was no indication that he meant to flee. He had already had ample opportunity to destroy any evidence he thought incriminating. There is no suggestion that, on the night in question, the car was being used for any illegal purpose, and it was regularly parked in the driveway of his house. The opportunity for search was thus hardly 'fleeting.' The objects that the police are assumed to have had probable cause to search for in the car were neither stolen nor contraband nor dangerous."

Footnote 20 of the opinion in part is as follows:

" . . . The rationale of *Chambers* is that *given* a justified initial intrusion, there is little difference between a search on the open highway and a later search at the station. Here, we deal with the prior question of *whether* the initial intrusion is justified. For this purpose, it seems abundantly clear that there is a significant constitutional difference between stopping, seizing, and searching a car on the open highway and entering private property to seize and search an unoccupied, parked vehicle not then being used for any illegal purpose. . . . "

The language in *Coolidge* makes it abundantly clear that it does not purport to overrule either *Carroll* or *Chambers*.

Both *Coolidge* and *Chambers* stem from the Supreme Court's holding in *Carroll v. United States, supra,* to the effect that an automobile or other vehicle may be searched without a warrant when the officers have a reasonable or probable cause to believe that the vehicle is illegally transporting contraband materials. *Carroll* recognized the difference between the search of a dwelling or other structure and a mobile vehicle:

[There is] a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must

be sought." *Carroll v. United States, supra* (267 U.S. at 153).

*Chambers* extended the rule set forth in *Carroll* by holding that a vehicle may be searched at the police station without a search warrant when it could have been searched on the highway without a search warrant.

[5] Instant case is distinguishable from *Coolidge.* Here, the automobile occupied by defendants was stopped on a public street in the early morning darkness. The occupants had little opportunity to destroy incriminating evidence that might have been present. The officers had every reason to believe that defendants would flee. There was nothing to assure the officers that the automobile would not be moved or that articles would not be removed from it if an immediate search was not conducted. Under the existing circumstances the officers had to choose between immobilizing and searching the car or obtaining other officers for surveillance of the vehicle while they went about the patently difficult process of finding a judicial officer at approximately 2:30 in the morning to consider whether a search warrant should be issued. Therefore, if probable cause to search existed, we think the action of the officers in removing the car and searching it at the police station was reasonable. The exigent circumtances presented a "fleeting opportunity" which made it impracticable to obtain a search warrant.

[6] The remaining and crucial question is whether probable cause to search existed when defendants were arrested and placed in custody.

Justice Sharp, speaking for the Court in the case of *State v. Harris*, 279 N.C. 307, 182 S.E. 2d 364, defined probable cause as related to an arrest as follows:

"Probable cause and 'reasonable ground to believe' are substantially equivalent terms. 'Probable cause for an arrest has been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautions man in believing the accused to be guilty. . . . To establish probable cause the evidence need not amount to proof of guilt, or even to prima facie evidence of guilt, but it must be such as would actuate a reasonable man acting in good faith. One does not have probable cause unless he has information of facts which, if submitted to a magistrate, would require the

issuance of an arrest warrant.' 5 Am. Jur. 2d *Arrests* § 44 (1962), 'The existence of "probable cause," justifying an arrest without a warrant, is determined by factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. It is a pragmatic question to be determined in each case in the light of the particular circumstances and the particular offense involved.' . . . "

The definition and attendant rules above stated are applicable to probable cause as related to searches.

Here the totality of the circumstances gave the officers reasonable grounds to believe that defendants had committed a crime and that the automobile in which they were riding contained evidence pertaining to the crime. Without repeating the voir dire evidence in the case, we point to certain evidentiary highlights supporting the officers' belief and action: (1) the presence in the automobile of two men seen running from an area behind the Weil-Creech Oil Company toward the then parked automobile in the early morning hours; (2) the presence of a bag of money, some of which was wrapped by material bearing the inscription "Weil-Creech"; and (3) the flight of one of the occupants when Officer Bell commented on the presence of the money.

We can see no constitutional difference between this case and *Chambers* and *Carroll*. Our search reveals that in similar factual situations other jurisdictions have distinguished *Coolidge* and have applied the rule and reasoning of *Chambers* and *Carroll*. See, e.g., *United States v. Ellis*, 461 F. 2d 962 (2nd Cir. 1972) ; *United States v. Castaldi*, 453 F. 2d 506 (7th Cir. 1971), cert. den. 405 U.S. 992, 92 S.Ct. 1263, 31 L.Ed. 2d 460; *People v. Munoz*, 21 Cal. App. 3d 805, 98 Cal. Rptr. 758; *People v. Wrona*, 7 Ill. App. 3d 1, 286 N.E. 2d 370; *Brinlee v. State*, 499 P. 2d 1397 (Okla. 1972) ; *Smith v. Commonwealth*, 212 Va. 606, 186 S.E. 2d 65.

Probable cause to arrest and search existed at the time of the arrest and continued to exist when the automobile was searched at the police station.

The trial judge correctly admitted evidence concerning the burglary tools found pursuant to the search conducted at the police station.

We have examined defendants' other assignments of error and find that they do not merit discussion.

For reasons stated, the decision of the Court of Appeals is

Reversed.