STATE OF NORTH CAROLINA v. DAVID WILLIAM CHAMBERS, JAMES C. HICKS, JR., BILLY DUNN

No. 793SC22

(Filed 5 June 1979)

Searches and Seizures § 11— warrantless search of automobile—probable cause

Officers had probable cause to believe that one defendant's car contained marijuana and a warrantless search of the car was proper where the officers knew that one defendant dealt in large quantities of marijuana; an undercover agent had witnessed a sale of marijuana by one defendant two and one-half months earlier; and just prior to the search in question, the officers observed defendants engaged in what any reasonably intelligent narcotics officer, under all the circumstances, would recognize as suspicious behavior and would believe to be another drug transfer.

Judge MARTIN (Harry C.) concurring.

APPEAL by the State of North Carolina from *Reid, Judge.* Order entered 18 August 1978 in Superior Court, PITT County. Heard in the Court of Appeals 3 April 1979.

Defendants were indicted on charges of felonious possession of more than one ounce of marijuana. Prior to trial, all three defendants moved to suppress the evidence of the marijuana. At the suppression hearing, Detective Weatherington testified that in February, 1978, a confidential source told him that defendant Chambers was dealing in large quantities of marijuana and was using a gray Ford pickup. He frequented a residence at 113 East Ninth Street that was occupied by his girl friend. The informant called Chambers in Weatherington's presence and arranged for the purchase of a quarter pound of Columbian marijuana for $100.00. Later that day, the informant met with Chambers who was driving a gray Ford pickup truck registered in his name. The informant got into Chambers' vehicle, and the informant later gave Weatherington a plastic bag containing marijuana. Weatherington observed this transaction but did not arrest Chambers.

On 18 April 1978, around 5:00 p.m., Weatherington saw Chambers drive the same truck into a service station lot. Chambers left his truck and met with defendant Dunn. Dunn removed a small object from his pocket and showed it to Chambers. Dunn got into his car and drove across the service station lot into an automobile agency parking lot. Dunn and defendant Hicks got out of the car and drove off with Chambers in his truck. Weatherington followed the truck but lost it in traffic.

Shortly after 10:00 that evening, Weatherington received a call at his office reporting that the truck was in front of the 113 East Ninth Street residence. Three men were seen leaving the residence and getting into the truck. The truck drove off and was later observed as it returned to the parking lot around 11:40 p.m. Detective Garrison, who was at the scene, testified that he saw the defendants remove a large dark-colored bag from the rear of the Chambers truck and put it into the trunk of the car. The officers went up to the defendants and Weatherington asked Dunn for permission to search the car. Dunn said that the car belonged to his mother and refused. Weatherington then told him that he believed marijuana was in the car and that he was going to conduct an emergency search. None of the defendants were arrested at this time. Dunn gave the car keys to Weatherington who unlocked the trunk and found the plastic bag containing almost ten pounds of marijuana. He also found a pistol in the glove compartment.

On cross-examination, Weatherington testified that the parking lot was a mile and a half from the Pitt County Courthouse and that the magistrate was on duty twenty-four hours a day. None of the defendants tried to run or to resist the officers. He would have attempted to restrain them had they tried to flee. Weatherington had not received information about Dunn and Hicks from his informant and had not heard from his informant since February. He had no other information that a drug deal was in progress on that day.

The court made findings of fact substantially in accord with the evidence. The court concluded that Dunn's car was searched as it sat parked in a private lot under the control of the police officers. There was no opportunity for flight by the defendants or the removal of evidence. The court concluded that there was no probable cause for the search because any evidence of criminal activity on the part of Chambers occurred more than two months prior to the search and there was no information which would give rise to more than mere speculation or conjecture that Chambers was engaged in criminal activity. There was, therefore, no underlying factual basis for the search other than suspicion. The court also found that there were no exigent circumstances making it necessary to search the car without a warrant. The officers had control of the vehicle and ample time to obtain a warrant. Furthermore, the court found that Chambers had standing to contest the search of Dunn's car because of the allegation that Chambers had possession of the marijuana. The court, therefore, concluded that the motions to suppress should be granted. From this judgment, the State appealed.

*Attorney General Edmisten, by Associate Attorney Grayson G. Kelley, for the State.*

*Williamson, Herrin & Stokes, by Milton C. Williamson and Mickey A. Herrin, for defendant appellee, Chambers; Dixon & Horne, by Phillip R. Dixon, for defendant appellee, Hicks; Blount, Crisp & Savage, by Nelson B. Crisp, for defendant appellee, Dunn.*

VAUGHN, Judge.

The issue presented in this case is whether the trial court erred in holding that the warrantless search of defendant Dunn's

automobile was unconstitutional and, therefore, erred in granting the defendants' motions to suppress the evidence seized in the search. The general rule is that a valid search warrant must be obtained for every search or seizure. *State v. Allen*, 282 N.C. 503, 194 S.E. 2d 9 (1973). Nevertheless, there are certain exceptions. A search warrant is not required when the search is incident to a lawful arrest. *Chimel v. California*, 395 U.S. 752 (1969); *State v. Allen, supra*. A warrant is also not required when the items seized are in plain view of an officer who is in a place where he has a legal right to be. *State v. Legette*, 292 N.C. 44, 231 S.E. 2d 896 (1977). Finally, a warrant is not required when officers have probable cause to search a vehicle and exigent circumstances make it impractical to obtain a warrant. *Chambers v. Maroney*, 399 U.S. 42 (1970); *Carroll v. United States*, 267 U.S. 132 (1925); *State v. Allen, supra*. Since the defendants were not under arrest at the time of this search, and since the bag of marijuana was not in plain view, the only justification for this warrantless search would be that it was made with probable cause under exigent circumstances. We must determine, therefore, whether this exception to the search warrant requirement is applicable in this case.

The probable cause with exigent circumstances exception was first enunciated in *Carroll v. United States, supra*. In *Carroll*, officers stopped a vehicle on a highway running between Grand Rapids and Detroit, Michigan. Detroit was known as a major source of illegal liquors. Two and one-half months earlier, these officers attempted to purchase illegal liquor from the defendants. They met with the defendants to arrange the purchase but the defendants never delivered the merchandise. The officers did, however, notice the car defendants were driving. A few days later, they saw the defendants driving this same car on the highway between Grand Rapids and Detroit. They followed the car but the defendants got away. Over two months later they again saw the car on this same highway. The officers stopped the car and their search revealed illegal liquor. The Supreme Court upheld the validity of this search stating that

> "if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is

subject to seizure and destruction, the search and seizure are valid." *Carroll v. United States, supra,* at 149.

The Court made a distinction between goods subject to forfeiture stored in a dwelling house and like goods concealed in a movable vehicle where they could quickly be placed out of reach. In the latter situation, vehicles may be searched and goods seized without a warrant in circumstances which would require a warrant if a dwelling were to be searched. *See Chambers v. Maroney, supra.*

We first consider whether the officers in this case had probable cause to conduct the search of Dunn's car. In *Carroll,* the Supreme Court stated that probable cause exists " '[i]f the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed.' " (Citations omitted.) *Carroll v. United States, supra,* at 161. The Court noted that Detroit was a major supply area for illegal liquor, the officers were regularly patrolling that highway, they knew or had convincing evidence to make them believe that defendants were engaged in selling illegal liquor, and they had seen defendants in the same car on the highway over two months before the search in question. They held these facts and circumstances sufficient to find probable cause.

A situation similar to that in *Carroll* occurred in *Brinegar v. United States,* 338 U.S. 160 (1949) where defendant's car was searched and illegally imported liquor was found. The officers knew defendant had a reputation for hauling liquor, they knew he had been arrested five months earlier for hauling liquor and they had seen him load it on two other occasions. At the time of the search, defendant was driving on a highway between a known supply area and a likely market. Again, the Court held that these facts were sufficient to support a finding of probable cause. *See also United States v. Pretzinger,* 542 F. 2d 517 (9th Cir. 1976).

Our Supreme Court has held that observation of certain types of non-transparent containers, generally used to hold contraband, is one factor affording probable cause that the vehicle carrying such a container is transporting contraband. In *State v. Simmons,* 278 N.C. 468, 180 S.E. 2d 97 (1971), two deputy sheriffs, pursuant to a phone call, located defendant's car parked in an alley. While standing on the sidewalk, one of the deputies saw a

cardboard carton containing plastic jugs sitting on the seat of defendant's car and two jugs sitting on the floor. He could not see the contents of the jugs. Both deputies testified that non-taxpaid liquor was often transported in this type of jug. The deputies seized the jugs without a warrant and found that they did contain non-taxpaid liquor. Defendant contended that since the contents of the jugs could not be seen, the deputies had no probable cause to believe that the jugs contained the contraband. The Court disagreed and held that the presence of the containers, known to be of the type regularly used to transport non-taxpaid liquor, could be one of the circumstances providing probable cause to believe that the vehicle involved was transporting non-taxpaid liquor.

In the present case, the facts and circumstances known to the officers at the time of the search provided probable cause for them to believe that Dunn's car contained marijuana. Weatherington knew that Chambers was dealing in large quantities of marijuana. Two and one-half months earlier, Weatherington witnessed a sale between Chambers and an informant in which a quarter of a pound of marijuana in a plastic bag was purchased. At that sale, Chambers was driving a gray Ford pickup truck. Just prior to the search in question, the officers observed Chambers engaged in what any reasonably intelligent narcotics officer, under all the circumstances, would recognize as suspicious behavior. They saw Chambers, a known drug dealer, drive to the lot of a gasoline service station in the same truck he had used in earlier drug sales. Chambers conducted no business with the station but was met, as if by design, by Dunn who emerged from a parked vehicle and allowed Chambers to inspect what he had been carrying in his right hip pocket. Hicks waited in the Dunn car. Some agreement having obviously been reached, both vehicles were then moved to the parking lot of an automobile agency. No business was conducted with the automobile agency. The Dunn car was left there, and the trio then departed in the same truck previously used by Chambers in his drug traffic. Weatherington attempted to follow but lost the trail. The Chambers truck was subsequently located, as expected, at the 113 East Ninth Street residence frequented by Chambers. The truck was then observed as it left that address and returned at nearly midnight to the automobile agency where the trio had left the

Dunn vehicle. The officers then watched as defendants transferred the large dark bag from the back of the Chambers truck to the trunk of the Dunn vehicle. Certainly these circumstances were such as to give a person, however prudent and cautious, probable cause to believe that he had just witnessed another drug transfer by Chambers and thus justify an inspection of the bag he had just seen placed in the car trunk.

We now consider whether there were exigent circumstances making it permissible to search the car before obtaining a warrant. Defendants contend that since a magistrate was only a mile and a half away, Weatherington had the car keys, there were several officers present, the defendants did not attempt to flee, and the car was parked in an automobile agency parking lot instead of on the highway, the officers should have held the car and obtained a search warrant. In *Chambers v. Maroney, supra,* the Supreme Court stated

> "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." *Chambers v. Maroney, supra,* at 52.

Thus, that the officers could have seized and held the car and then obtained a warrant, does not invalidate this search. The course the officers elected to follow was reasonable under the Fourth Amendment. *See also State v. Allen, supra.* Furthermore, it is of little consequence that the car was parked in an automobile agency lot instead of on a public street. In *Cardwell v. Lewis,* 417 U.S. 583 (1974), the seized vehicle was parked in a public parking lot. The defendant had been arrested and the police held the car keys and parking stub. Nevertheless, the Court saw no legal significance in these facts to distinguish the situation from *Chambers. See also Texas v. White,* 423 U.S. 67 (1975); *State v. Jones,* 295 N.C. 345, 245 S.E. 2d 711 (1978). Although Dunn's car was not on the street immediately prior to the search, this does not mean that it would not be driven off if the police had left to obtain a search warrant.

We are not unaware of the decision of the Supreme Court in *Coolidge v. New Hampshire,* 403 U.S. 443 (1971), but conclude that

the case is distinguishable. In *Coolidge*, the police had long suspected that an inspection of the car would provide evidence of defendant's guilt. Defendant had had ample time to destroy any incriminating evidence. The car had been regularly parked in defendant's driveway, was not then being used for any illegal purpose, and defendant could not have gained access to the car after the police arrived. There was no indication that the defendant was about to flee. In summary, there were no circumstances justifying an immediate warrantless search. In the instant case, the marijuana had just been placed in the automobile and the driver was present. The officers' opportunity to inspect the bag in the trunk of the car was a fleeting one. It is obvious that it would have been lost unless they had either seized the automobile pending the issuance of a warrant or conducted an immediate search. The immediate search was reasonable; therefore, the judge erred when he allowed defendants' motions to suppress the evidence.

Having concluded that the search was proper, we need not consider the standing of Chambers and Hicks to contest the search of the Dunn vehicle. *See Rakas v. Illinois*, 99 S.Ct. 421 (1978).

The order allowing the motions to suppress is reversed. The cases are remanded for trial.

Reversed and remanded.

Judges ERWIN and MARTIN (Harry C.) concur.

Judge MARTIN (Harry C.) concurring.

I concur in the scholarly opinion of Judge Vaughn, writing for the Court. In addition, I find the trial court erred in sustaining the motions to suppress, for the reason that neither Chambers nor Hicks had any standing to question the validity of the search of the Chevrolet car in the possession of Dunn and belonging to his mother. They had no legitimate expectation of privacy with respect to the Dunn automobile. *Katz v. United States*, 389 U.S. 347, 19 L.Ed. 2d 576 (1967). Chambers and Hicks have not asserted any property nor possessory interest in the Dunn car, and by their plea of not guilty deny any interest in the contraband seized. Fourth Amendment rights are personal rights which

may not be asserted vicariously. *Alderman v. United States*, 394 U.S. 165, 22 L.Ed. 2d 176 (1969); *State v. Prevette*, 39 N.C. App. 470, 250 S.E. 2d 682 (1979).

The authorities on this subject have been recently analyzed in *Rakas v. Illinois*, --- U.S. ---, 58 L.Ed. 2d 387 (1978). North Carolina has long followed the results reached in *Rakas. See State v. Eppley*, 282 N.C. 249, 192 S.E. 2d 441 (1972); *State v. Ray*, 274 N.C. 556, 164 S.E. 2d 457 (1968); *State v. Craddock*, 272 N.C. 160, 158 S.E. 2d 25 (1967); *State v. Hamilton*, 264 N.C. 277, 141 S.E. 2d 506, *cert. denied*, 384 U.S. 1020 (1965); *State v. Jennings*, 16 N.C. App. 205, 192 S.E. 2d 46 (1972).