State v. Crews

STATE OF NORTH CAROLINA v. DAVID CREWS

No. 8322SC148

(Filed 21 February 1984)

1. **Searches and Seizures § 3— lawful entry into defendant's home to render aid — warrantless search after defendant has left**

    Where an officer, responding to a call for aid, made a proper warrantless entry into defendant's home and found defendant lying on a couch in his home with a gunshot wound in his shoulder, and the officer investigated the bedroom while defendant's wife was present and found a bullet entry hole inside an open closet, the officer's further warrantless search for the bullet exit hole after defendant and his wife left for the hospital and his discovery of marijuana when he opened a closet door in an adjoining room were illegal absent proof that the search came within an exception to the requirements for a warrant.

2. **Searches and Seizures § 44— suppression hearing — failure of court to make findings concerning consent — remand of case**

    Where there was evidence at a suppression hearing that defendant's wife consented to an officer's warrantless search of defendant's home after defendant and his wife had left for a hospital, but the trial court made no findings of fact concerning consent, the case will be remanded to the trial court for further hearing, findings of fact and conclusions.

    Chief Judge VAUGHN dissenting.

State v. Crews

APPEAL by defendant from *Beaty, Judge.* Judgment entered 20 October 1982, in Superior Court, DAVIE County. Heard in the Court of Appeals 19 October 1983.

Defendant, David Crews, entered a plea of guilty to felony possession of marijuana after his motion to suppress was denied. He received a sentence of two years imprisonment, part of which was suspended.

The evidence at the hearing on the motion showed that the sheriff's department received a call for immediate aid. Deputy Boger responded and found defendant lying on a couch in his home with a gunshot wound in his shoulder. The ambulance crew had already arrived. The deputy talked with the defendant's wife, who told him defendant had shot himself with a .45 caliber pistol. Before he was carried out, defendant confirmed this information. Deputy Boger investigated the bedroom while Mrs. Crews was present and found a bullet entry hole inside an open closet. Before he completed his investigation, defendant and Mrs. Crews left for the hospital. Deputy Boger continued looking for the bullet and bullet exit hole and opened a closet on the opposite (living room) side of the wall from where he saw the bullet entry hole in the bedroom. He found a large quantity of marijuana inside the closet.

Following the hearing, the court found facts as outlined above. It denied the motion, concluding as a matter of law:

(1) That Deputy R. C. Boger came to the residence of David Crews in response to an ambulance call involving a shooting incident and that he thereafter executed a warrantless entry of the Crews' premises in the reasonable belief that David Crews or a person in the residence was in the need of immediate aid.

(2) That upon discovering the nature of the shooting, Deputy Boger conducting a normal and routine investigation to determine the entry and exit holes of the bullet fired from the .45 caliber semiautomatic pistol used in the shooting. That upon finding the entry hole, the deputy continued into the living room to examine the same wall in which the bullet had entered. That upon not discovering the exit hole initially in the wall, the deputy opened the closet door which was on the same living room wall.

(3) That upon continuing his reasonable investigation, the deputy opened the door and observed in plain view the burlap bag on the floor of the closet which contained a visible plastic bag with a vegetable material examined subsequently and found to be marijuana.

*Attorney General Edmisten, by Assistant Attorney General Dennis P. Myers, for the State.*

*Gary W. Williard and Bruce C. Fraser, for defendant appellant.*

JOHNSON, Judge.

[1]  The sole issue presented for review is whether the trial court erred in denying defendant's motion to suppress the evidence seized from his home. The court apparently relied on the "routine" investigative nature of the deputy's conduct in concluding that the evidence was admissible. However, this conclusion was erroneous.

The State argues that *Harris v. United States,* 390 U.S. 234, 19 L.Ed. 2d 1067, 88 S.Ct. 992 (1968), sanctions routine police procedures such as the warrantless search for the bullet here. We disagree. In *Harris* a police regulation required impoundment searches of vehicles to secure valuables and protect the vehicle itself. Therefore evidence in plain view when an officer entered the car pursuant to the regulation could properly be seized. The Court, in a *per curiam* opinion, carefully limited *Harris* to the "narrow circumstances" before it. Nothing in the record suggests any similar regulatory requirement here. We note also that *Harris* applies to automobiles, for which there has traditionally been a lessened expectation of privacy. *See United States v. Ross,* 455 U.S. 798, 72 L.Ed. 2d 572, 102 S.Ct. 2157 (1982). We hesitate to extend its application to private homes. Furthermore, the mere fact that certain police procedures are "routine" does not remove them from constitutional scrutiny. *See e.g. Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966) (discussing typical interrogation techniques). Therefore, *Harris* does not provide constitutional justification for this search.

More recently, in *Mincey v. Arizona,* 437 U.S. 385, 57 L.Ed. 2d 290, 98 S.Ct. 2408 (1978), the Court held that officers may prop-

erly enter and search without warrants when they reasonably believe a person within is in need of immediate aid, or to promptly search for other victims of .a homicide or a killer still on the premises. However, once these or similar exigent circumstances cease to exist, the conduct of any further warrantless search is not justified. In *Mincey*, as here, there was no indication that evidence would be lost, destroyed or removed during the time required to obtain a search warrant. (In fact, the officer testified that he was "in control" of the premises.) Furthermore, as in *Mincey*, here there was also nothing to suggest any inconvenience in obtaining a warrant. Therefore, unless the circumstances satisfied one of the exceptions to the warrant requirement, Deputy Boger had no constitutional authority to continue his search. *See also United States v. Presler*, 610 F. 2d 1206 (4th Cir. 1979).

The State contends that the officer's conduct was not a search at all, but part of a routine investigation. However, *Mincey, supra*, makes it clear that police may not conduct such routine investigations within private homes without a warrant except in very limited circumstances not applicable here.

Of course, if the officer had discovered the marijuana in plain view in one of the rooms he entered to render aid or to talk to Mrs. Crews, he could have legitimately seized it. *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L.Ed. 2d 564, 91 S.Ct. 2022 (1971); *State v. Rigsbee*, 285 N.C. 708, 208 S.E. 2d 656 (1974). Here, however, he continued to search after defendant and Mrs. Crews had left. The original proper warrantless entry did not justify such an extended search. *See Wallace v. King*, 626 F. 2d 1157 (4th Cir. 1980), *cert. denied*, 451 U.S. 969, 68 L.Ed. 2d 348, 101 S.Ct. 2045 (1981) (lack of consent to search beyond entry hall made search improper); *State v. Nelson*, 298 N.C. 573, 260 S.E. 2d 629 (1979), *cert. denied sub nom., Jolly v. North Carolina*, 446 U.S. 929, 64 L.Ed. 2d 282, 100 S.Ct. 1867 (1980). It is axiomatic that defendant had a legitimate expectation of privacy in a closed closet in his own home. Therefore, the State must satisfy one of the exceptions to the warrant requirement to justify the warrantless entry into it.

[2] The State argues that Mrs. Crews had authority to consent to the search and that she did in fact give her implicit consent. While the evidence at the hearing might have supported such a

theory, the court made no findings of fact to that effect. Mrs. Crews did not testify. *State v. Cooke*, 306 N.C. 132, 291 S.E. 2d 618 (1982) is dispositive of the State's contention on the issue of consent. There, the Supreme Court denied the State's appeal from an order suppressing evidence on Fourth Amendment grounds, stating:

> [T]he scope of appellate review of an order such as this is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law.

*Id.* at 134, 291 S.E. 2d at 619. As discussed above, although the Court's findings are supported by the evidence, they support neither its conclusions of law nor the State's theory of consent. The State has the burden, ". . . *at the suppression hearing*, of demonstrating with particularity a constitutionally sufficient justification of the officers' search. . . ." *Id.* at 136, 291 S.E. 2d at 620 (emphasis original). An appellate court does not sit as the finder of fact, and it would be unfair to the defendant to consider the State's contention on the record presented in this case. *See id.* at 137-38, 291 S.E. 2d at 621. Therefore, we hold that the State failed to meet its burden and that the court erred in denying defendant's motion. Unlike the situation presented in *Cooke*, however, we see no prejudice to the defendant in remanding this case to the trial court for further hearing, findings of fact, and conclusions of law.

Therefore, the order denying defendant's motion is vacated, the judgment is vacated, and the case is remanded for further proceedings consistent with this opinion.

Vacated and remanded.

Judge WELLS concurs.

Chief Judge VAUGHN dissents.

Chief Judge VAUGHN dissenting.

I believe the motion to suppress was properly denied and, therefore, vote to affirm the judgment.