STATE OF NORTH CAROLINA v. MARTHA JEAN ISLEIB

No. 851SC1132

(Filed 20 May 1986)

**Searches and Seizures § 11— warrantless search of vehicle improper**

Where a confidential informant, who had provided reliable information on three occasions within the past year, informed officers that, at a given time, defendant would drive her car down a certain road to deliver marijuana, that the car was a certain make and color, and that defendant would have a male passenger with her, and where officers had twenty hours to obtain a warrant for the search of defendant's car, their failure to obtain the warrant required the exclusion of evidence obtained by their warrantless search.

APPEAL by the State from *Barefoot, Judge.* Judgment entered 5 September 1985 in DARE County Superior Court. Heard in the Court of Appeals 4 March 1986.

Defendant was indicted for felonious possession of marijuana and possession of marijuana with intent to sell and deliver. Defendant then filed a motion to suppress all evidence seized in a warrantless search of her automobile.

At the hearing on the motion to suppress, the sole witness was Deputy C. H. Midgette of the Dare County Sheriff's Department. His testimony is summarized as follows: On 5 April 1985, between 2:00 and 4:00 p.m., Deputy Midgette and another deputy spoke to a confidential informant at the Dare County Courthouse. The informant had provided information pertaining to marijuana violations three times within the previous year, each time leading to arrests and convictions. On this occasion the informant told Deputy Midgette that a woman named Martha would be coming to Hatteras Island the following day. He stated that she would be driving from the beach area north of Oregon Inlet in an "Army green" station wagon, either a Dodge or a Plymouth, with some type of decal on the door, to deliver quarter-ounce bags of marijuana. An unidentified white male would be riding with her. Deputy Midgette testified that he knew who Martha was, that she lived at the beach north of Oregon Inlet and that she owned a green station wagon. No search warrant was obtained.

Over twenty hours later, at 12:35 p.m. on 6 April, Deputy Midgette spotted the station wagon driving south on N.C. Highway 12 north of Waves on Hatteras Island. He contacted Deputy Gray, who intercepted the defendant in Avon. When Deputy Midgette arrived at the scene, defendant was standing outside of her station wagon. He told defendant that he had information that she was delivering marijuana and that he was going to search her car pursuant to an "emergency stop." Defendant asked Deputy Midgette if he had a warrant and he replied that he did not. Defendant did not consent to a search of the car. Deputy Midgette retrieved defendant's pocketbook from the front seat in which a bag with less than a quarter-ounce of marijuana was found. Midgette then asked defendant's companion to get out of the car. The companion then pulled a bag out of his pocket that contained "a few grams" of marijuana. Deputy Midgette then proceeded to

search the vehicle and found six individually wrapped quarter-ounce bags of marijuana. During this time Midgette never informed defendant that she was under arrest. There was never any contraband within plain view of the officers from outside the automobile.

After hearing this testimony and the arguments of counsel, Judge Barefoot held that the search of the vehicle was illegal and ordered that all evidence obtained from the search be suppressed. The State appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General John H. Watters, for the State.*

*Aldridge, Seawell & Khoury, by G. Irvin Aldridge, for defendant-appellee.*

WELLS, Judge.

The State contends in its sole assignment of error that the trial court erred in concluding as a matter of law that the warrantless search of defendant's automobile was illegal and that the evidence seized pursuant to the search be suppressed. The State concedes on the record that this evidence is essential to its case against defendant.

The relevant findings of fact and conclusions of law of the trial court are set forth below:

. . .

4. That the Officer received reliable information from an informant on April 5, 1985 between 2:00 and 4:00 p.m. at the Courthouse in Manteo, North Carolina. The information that the Officer received indicated that the person was the defendant and described the vehicle.

5. That the Deputy Sheriff, C. H. Midgett[e], knew the defendant and was familiar with the automobile and recognized the information as being information about the defendant and the automobile being an automobile owned by the defendant.

6. The reliable informant told Deputy C. H. Midgett[e] that the defendant and her automobile were travelling on

N. C. Highway 12 toward Hatteras somewhere North of Oregon Inlet, and said vehicle contained several one-fourth ounce packages of marijuana.

7. That the Deputy Sheriff recognized said vehicle and the defendant going South toward Waves around 12:35 p.m. on April 6, 1985, 20 or more hours after Deputy Midgett[e] had received said information in Manteo.

8. That Deputy Midgett[e] stopped and called Deputy Gray and asked him to intercept the car and same was intercepted by Deputy Gray in Avon.

9. That Deputy Midgett[e] arrived in Avon within a few minutes after Deputy Gray had detained the defendant and her automobile along with another person who was in her automobile.

10. That Deputy Midgett[e] told the defendant he was going to search her vehicle. The defendant asked if he had a search warrant to search her vehicle. She was told that he did not have a search warrant.

11. The defendant did not consent to the search of her automobile or her personal effects within the automobile. Deputy Midgett[e] told the defendant that he could search the automobile because of the emergency situation.

12. That there was no controlled substance or suspected controlled substance which was in plain view from outside of the automobile prior to the search of said automobile.

13. That Deputy Midgett[e] did not secure a search warrant for said vehicle even though he had the information some 20 hours or more prior to the time of the search and was in a position to secure a search warrant for when said automobile was stopped in Avon.

Based upon the foregoing finding of facts, the Court concludes as a matter of law that the search was illegal and the evidence should be suppressed.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the evidence identified as marijuana and all paraphernalia associated therewith be hereby suppressed.

Though there are exceptions in the record to findings of fact numbers 6 and 13, the exception to finding of fact number 6 is not brought forward in the brief and is therefore deemed abandoned. Rule 28(a) of the Rules of Appellate Procedure. The exception to finding of fact number 13 is brought forward in the brief, but is not argued and is also deemed abandoned. Rule 28(b)(5) of the Rules of Appellate Procedure. Insofar as finding of fact number 13 constitutes a conclusion of law, it has been preserved for review.

There are certain exceptions to the general rule that a valid search warrant must accompany every search or seizure.

These exceptions arise when the exigencies of the situation call for unorthodox procedures. Such is the case when it is determined to be impracticable, in light of all the circumstances, to obtain a search warrant. The courts have recognized three situations which justify application of this principle to a course of conduct ordinarily forbidden by the Fourth Amendment . . . .

First, a warrantless search and seizure may be made when it is incident to a valid arrest. [Citations omitted.]

Second, evidence obtained by officers without a search warrant is admissible in evidence where the articles are seized in plain view without necessity of search. [Citations omitted.]

Third, a warrantless search of a vehicle capable of movement may be made by officers when they have probable cause to search and exigent circumstances make it impracticable to secure a search warrant. [Citations omitted.]

*State v. Allen*, 282 N.C. 503, 194 S.E. 2d 9 (1973). There is nothing in the record to indicate when defendant was arrested and the State does not argue that the evidence was seized pursuant to a search incident to an arrest. The record is clear and the judge found that the evidence was not in plain view of Deputy Midgette before he entered the vehicle. Therefore, the search and seizure were valid, if at all, based on probable cause to search and exigent circumstances that made it impracticable to secure a search warrant.

Probable cause must arise before a search may be deemed reasonable. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963); *State v. Johnson*, 29 N.C. App. 534, 225 S.E. 2d 113 (1976). In order to determine if and when probable cause arose, we must first discuss the requirements of probable cause as they relate to the circumstances of the case below.

The leading case on determining probable cause from the information of an informant is *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed. 2d 527 (1983). In *Gates*, an anonymous letter was sent to the police informing them that Lance and Susan Gates were drug dealers. The letter stated that their *modus operandi* was for Susan Gates to drive their car down to Florida, leave it and then fly back to Illinois. The car trunk would be filled with drugs in Florida, then Lance Gates would fly down and drive the car back to Illinois. The police learned that "L. Gates" made a reservation to fly to West Palm Beach, Florida, stayed in a motel room registered to Susan Gates and then left the next morning in an automobile bearing Illinois license plates, traveling north on an interstate highway frequently used by travelers to the Chicago area. An affidavit setting out these facts was signed by a police officer, who attached the anonymous letter. A warrant to search the Gates' house and automobile was obtained and the police stopped the Gates as they were driving on the interstate, searched their automobile and retrieved 350 pounds of marijuana. The circuit court suppressed this evidence on the basis that the affidavit failed to support the necessary determination of probable cause. The Illinois Appellate and Supreme Courts affirmed, based on the previous United States Supreme Court cases of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed. 2d 637 (1969). The *Aguilar* and *Spinelli* cases established a two-pronged test to determine the sufficiency of evidence from an informant to establish probable cause: (1) that underlying circumstances exist to independently support the validity of the informant's statement and (2) that some support is shown for the informant's reliability or credibility. *Spinelli, supra. Gates* concluded that the *Aguilar/Spinelli* test was too restrictive, though an informant's veracity and reliability are highly relevant in determining the value of his report. *Gates, supra.* The Court substituted a laxer standard, the "totality of the circumstances,"

a "common-sense," "fluid" concept in which the strength of one factor could overcome the weakness of another. The Court supported its argument by stating that too restrictive a test to obtain a warrant might lead police to

> resort to warrantless searches, with the hope of relying on consent or some other exception to the Warrant Clause that might develop at the time of the search. In addition, the possession of a warrant by officers conducting an arrest or search greatly reduces the perception of unlawful or intrusive police conduct, by assuring "the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *United States v. Chadwick*, 433 U.S. 1, 9, 53 L.Ed. 2d 538, 97 S.Ct. 2476 (1977).

*Gates, supra.* The North Carolina Supreme Court has adopted the "totality of the circumstances" test to determine the sufficiency of probable cause to issue a warrant under Article 1, § 20 of the North Carolina Constitution. *State v. Arrington*, 311 N.C. 633, 319 S.E. 2d 254 (1984). Though the *Aguilar/Spinelli* test has been abandoned, its prongs are still useful in determining whether an informant's statement gives rise to probable cause. *Gates, supra; State v. Walker*, 70 N.C. App. 403, 320 S.E. 2d 31 (1984); *see also* 1 LaFave, *Criminal Procedure* § 3.3, p. 194 (1984). Underlying circumstances supported the validity of the informant's statement: Deputy Midgette knew the "woman named Martha," had known her for seven or eight years, knew that she owned a green station wagon and that she lived at the beach north of Oregon Inlet, the area from which the informant said she would be coming. Thus, there was independent corroboration of some of the non-criminal details of the informant's story.

Ample support was shown for the informant's reliability: three times in the previous year this informant had provided Deputy Midgette with information on marijuana-related charges that subsequently led to arrests and convictions.

Counsel for the State suggested at oral argument that probable cause may not have arisen until the station wagon was sighted on the highway, which sighting gave rise to exigent circumstances and a proper warrantless search. The State's argument proves too much. There was already confirmation of

non-criminal details of the informant's story. That defendant actually drove down the predicted highway on 6 April 1985 with a white male in her car can in no way be deemed evidence of criminal activity that would give rise to probable cause theretofore unsolidified. If probable cause did not arise from the informant's story, it did not arise at all, and the State has conducted an unreasonable search. However, given the totality of the circumstances, including independently verifiable facts and the reliability of the informant, we hold that probable cause did arise upon acquisition of the informant's information.

The State argues in its brief that "[t]he question of whether Deputy Midgett[e] had probable cause immediately prior to the search or some twenty hours earlier is interesting, but is of no legal consequence." In support of this statement, the State cites *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed. 2d 325 (1974):

> [W]e know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practicable moment. Exigent circumstances with regard to vehicles are not limited to situations where probable cause is unforeseeable and arises only at the time of arrest. . . . The exigency may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action.

*Cardwell* is inapplicable to the case at bar for several reasons. In *Cardwell*, the evidence seized was paint scrapings from the outside of an automobile. Employing an "expectation of privacy" analysis, *see Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed. 2d 576 (1967), the United States Supreme Court concluded that the exterior paint of an automobile, "knowingly expose[d] to the public, [was] *not a subject of Fourth Amendment protection*" (emphasis supplied). *Cardwell* was not decided on Fourth Amendment grounds and the State's quote must therefore be regarded as dictum. Further, the *Cardwell* court distinguished the case from previous automobile search cases and, in so doing, from the instant case as well, because "nothing from the interior of the car and no personal effects, which the Fourth Amendment traditional-

ly has been deemed to protect, were searched or seized and introduced into evidence." Finally, should circumstances arising after the solidification of probable cause present a question of exigency, even though the availability of a previous warrant and the knowledge of the police with regard to the circumstances leading up to the search and seizure may not "foreclose" the existence of exigent circumstances, these factors should logically be taken into account in determining whether the events at the time of the search and seizure were truly exigent.

*Cardwell* did not overrule a venerable line of cases that stress the importance of the warrant requirement.

> The Supreme Court has long expressed a strong preference for the use of arrest warrants and search warrants. Resort to the warrant process, the Court has declared, is preferred because it "interposes an orderly procedure" involving "judicial impartiality" [*United States v. Jeffers*, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951)] whereby "a neutral and detached magistrate" [*Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948)] can make "informed and deliberate determinations" [*Aguilar, supra*] on the issue of probable cause. To leave such decisions to the police would allow "hurried actions" [*Aguilar, supra*] by those "engaged in the often competitive enterprise of ferreting out crime." [*Johnson v. United States, supra.*]

1 LaFave, *Criminal Procedure* § 3.3, p. 185 (1984). "When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman. . . ." *Johnson v. United States, supra; State v. Hayes*, 291 N.C. 293, 230 S.E. 2d 146 (1976). In *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564 (1971), the Court explained that the warrantless search of an automobile stopped on the highway is justified by exigent circumstances because the car is movable, the occupants are alerted and the car's contents may never be found again if a warrant must be obtained; that is, *the opportunity to search is fleeting* and it becomes *not practicable* to secure a warrant. *Coolidge, supra; State v. Allen*, 282 N.C. 503, 194 S.E. 2d 9 (1973); *State v. Johnson*, 29 N.C. App. 534, 225 S.E. 2d 113 (1976). Though an automobile has a diminished expectation of privacy when compared to that of a home, *United States v.*

*Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed. 2d 538 (1977), the word "automobile" is not a talisman in whose presence the Fourth Amendment fades away and disappears. *Coolidge, supra.*

In *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed. 2d 572 (1982), the Court restated language from the original "automobile exception" case, *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925):

> "On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid. . . ."

This and other language in the *Ross* opinion introduced an ambiguity into the law concerning the Supreme Court's view on the necessity of exigent circumstances to justify a warrantless automobile search. Some post-*Ross* opinions of our Court seem to follow an interpretation of *Ross* that exigent circumstances were no longer required. *See State v. Schneider*, 60 N.C. App. 185, 298 S.E. 2d 432 (1982), *disc. rev. denied*, 307 N.C. 701, 301 S.E. 2d 394 (1983) (Hill, J.) and *State v. Bennett*, 65 N.C. App. 394, 308 S.E. 2d 879 (1983) (Hill, J.). *But see State v. Carr*, 61 N.C. App. 402, 301 S.E. 2d 430, *disc. rev. denied*, 308 N.C. 545, 304 S.E. 2d 239 (1983) (Johnson, J.); *see also* Note, *Search and Seizure—Warrantless Container Searches Under the Automobile and Search Incident to Arrest Exceptions—United States v. Ross*, 18 Wake Forest L. Rev. 1145 (1982).

However, in the recent decision of *California v. Carney*, 471 U.S. ---, 105 S.Ct. ---, 85 L.Ed. 2d 406 (1985), the Supreme Court returned to its previous language that the mobility of an automobile creates the exigencies that render vigorous enforcement of the warrant requirement impossible. The requirement of exigent circumstances to render a warrantless search reasonable continues to be the law of this State, *see State v. Carr, supra.* In our opinion, an automobile does not *per se* create exigencies. The exigency derives from the fear that "the vehicle and its occupants [will] become unavailable." *Carney, supra.* In the case *sub judice*, there was no such fear. At the time probable cause arose, the

"availability" of the car and its occupants was predicted for the next day. The highway on which they would travel, the color and model of their vehicle and the driver's identity were known. At this time, when all information necessary for the procurement of a warrant was known, there existed no exigent circumstances. This *prior knowledge* negates the State's argument that exigent circumstances existed at the time of search. This *prior knowledge* rendered the procurement of a warrant "reasonably practicable." *See Carroll, supra; State v. Allen, supra; State v. Johnson, supra.*

The State had the burden at the suppression hearing of demonstrating with particularity a constitutionally sufficient justification of the officer's search. *State v. Crews,* 66 N.C. App. 671, 311 S.E. 2d 895 (1984); *State v. Cooke,* 306 N.C. 132, 291 S.E. 2d 618 (1982). And one who seeks to justify a warrantless search has the burden of showing that the exigencies of the situation made search without a warrant imperative. *State v. McCloud,* 276 N.C. 518, 173 S.E. 2d 753 (1970). Law enforcement officers should not rely on the possibility that fate or their attempt to apprehend the subject will provide exigent circumstances. *See, e.g., United States v. Collazo,* 732 F. 2d 1200 (4th Cir. 1984), *cert. denied,* --- U.S. ---, 105 S.Ct. 777, 83 L.Ed. 2d 773 (1985); *Chadwick, supra.* The only argument for exigency put forward by the State concerns the automobile traveling on a public highway. The facts before us—the prior knowledge of the make and color of the automobile, of where, when and by whom it was to be driven— rendered non-exigent the vehicle's presence on a public highway. No other showing of exigency is argued by the State. There is no showing that, at the time probable cause arose from the informant's information, no magistrate was available or other emergencies prevented the procurement of a warrant by a limited staff. Indeed, no evidence was presented to show that the police ever considered that a warrant might be needed. The State has failed to meet its burden on this issue.

We hold that a warrant should have been obtained to search defendant's car and that the failure to procure a warrant demands the exclusion of the evidence obtained by the warrantless search. To hold otherwise would be to relax impermissibly the protections of the Fourth Amendment of the Constitution of the United States and Art. I, § 20 of the Constitution of North Carolina. We are not convinced that either the United States

Supreme Court or our Supreme Court has taken the position that when citizens make use of their motor vehicles they waive or forego all Fourth Amendment or Art. I, § 20 rights and we are unwilling to so hold.

Affirmed.

Judges WHICHARD and COZORT concur.